# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| COPPER SANDS HOMEOWNERS ASSOCIATION, INC., *et al.*, | ) Case No.: 2:10-cv-00510-GMN-GWF |
| | ) |
| Plaintiffs, | ) **ORDER** |
| | ) |
| vs. | ) |
| | ) |
| COPPER SANDS REALTY, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>INTRODUCTION</u>

Before the Court is Defendant Irwin Mortgage Corporation's ("Irwin") Motion to Dismiss (ECF No. 160) Plaintiffs' Third Amended Complaint ("TAC"). Plaintiffs Copper Sands Homeowners Association, Inc., *et al.* filed a Response on May 27, 2011 (ECF No. 203), to which Irwin filed a Reply on June 6, 2011 (ECF No. 219).

Before the Court is Defendant Countrywide Home Loans, Inc.'s ("Countrywide") Motion to Dismiss (ECF No. 162) Plaintiffs' TAC. Plaintiffs filed a Response on May 26, 2011 (ECF No. 201) and Countrywide filed a Reply on June 6, 2011 (ECF No. 218).

Also before the Court is Defendant Complex Solutions, Limited's ("Complex Solutions") Motion to Dismiss (ECF No. 169) Plaintiffs' TAC. Plaintiffs filed a Response on May 26, 2011 (ECF No. 202) and Complex Solutions filed a Reply on June 7, 2011 (ECF No. 223).

Defendant Cannon Management Company ("Cannon") and Defendant Manietta Electric, Inc. ("Manietta") filed a Joinder (ECF No. 177 & 196 respectively) to Countrywide, and Complex Solutions' Motions to Dismiss TAC.

**FACTS AND BACKGROUND**

This action is based on alleged misconduct in the conversion, sale, and financing of a condominium project.  Plaintiffs are unit owners in the condominium project and its homeowners' association.  The developer of the condominiums was Defendant Copper Sands Realty, LLC, which was managed by Defendants Robert Colucci and Dario Deluca.  The Third Amended Complaint names over thirty defendants who were allegedly involved in some aspect of the conversion of the property, including the sale and financing of the condominiums and the appraisal or management of the property.

Relevant to the instant motions, the TAC alleges the following claims against Irwin, Countrywide, Complex Solutions and Cannon: negligence, negligent misrepresentation, breach of contract and breach of implied warranties.  Additionally, the TAC alleges claims against Irwin and Countrywide for fraud, consumer fraud and deceptive trade practices, and two counts of civil RICO liability under Nevada's RICO statute.  Against Manietta, the TAC alleges only three claims: negligence, breach of contract and breach of implied warranties.

**DISCUSSION**

**A.      Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, a court takes all material allegations as true and construes them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely

conclusory, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

**B.    First Claim for Relief:  Negligence**

   **1.    Defendants Irwin and Countrywide**

To state a viable claim of negligence, a plaintiff must allege that (a) the defendant had a duty to exercise due care toward them; (b) the defendant breached the duty; (c) the breach was an actual cause of the plaintiffs' injury; (d) the breach was the proximate cause of the injury; and (e) the plaintiff suffered damage. *Hammerstein v. Jean Dev. West*, 907 P.2d 975, 977 (Nev. 1995); *Perez v. Las Vegas Medical Center*, 805 P.2d 589, 591 (Nev. 1991).  Plaintiffs allege that Defendants Irwin and Countrywide owed them "a duty to exercise reasonable care in arranging

for, and providing, loans to finance the purchase of units in the Copper Sands Condominiums" (TAC ¶ 90, ECF No. 154), and that Defendant breached that duty by "failing to ascertain the condition of the Subject Property," "using inaccurate appraisals," and "submitting inaccurate appraisal reports to Fannie Mae," (*Id.* at ¶ 91.)  Defendants Irwin and Countrywide argue that, as a matter of law, they owe no duty of care to Plaintiffs.

  "[A] financial institution does not owe a duty of care to a borrower when the lender's involvement in the loan transaction does not exceed the scope of its conventional role as a lender of money." *Velasquez v. HSBC Mortg. Services*, No. 2:09-cv-00784-KJD-LRL, 2009 WL 2338852, at *5 (D. Nev. July 24, 2009).  "The lender is under no duty to ensure the success of the borrower's investment." *Id.*  "Liability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender." *Id.* (internal quotation marks omitted).  Here, Plaintiffs have made no allegations that Irwin or Countrywide actively participated in the financed enterprise beyond the domain of the usual money lender; rather, Plaintiffs' claim appears to arise solely from Defendants' actions in arranging for and providing loans to purchase units in the Copper Sands Condominiums.  Such actions are merely those of a money lender.  Accordingly, Plaintiffs' first claim for relief will be dismissed as to Defendants Irwin and Countrywide.

  Plaintiffs attempt to argue that Nevada does impose a duty on lenders by citing to *Davis v. Nevada National Bank*, 737 P.2d 503, 506 (Nev. 1987) for the proposition that "lender owed borrower a duty to investigate construction defects of which it had notice," (Resp. 5:1-2, ECF No. 201)  However, that is not an accurate summary of the case, nor is the actual substance of the case relevant to the instant lawsuit.  In *Davis*, the Nevada Supreme Court held that lender liability may arise under a construction loan in very limited circumstances where:

/ / /

/ / /

> (1)   the lender assumes the responsibility or the right to distribute loan
> proceeds to parties other than its borrower during the course of construction;
> (2) the lender is apprised by its borrower of substantial deficiencies in
> construction that affect the structural integrity of the building; (3) the borrower
> requests that the lender withhold further distributions of loan proceeds pending
> the satisfactory resolution of the construction deficiency; (4) the lender
> continues to distribute loan proceeds in complete disregard of its borrower's
> complaints and without any bona fide attempt to ascertain the truth of said
> complaints; and (5) the borrower ultimately is damaged because the substance
> of the borrower's complaints was accurate and the borrower is unable to
> recover damages against the contractor or other party directly responsible for
> the construction deficiencies.

*Id.* at 406.  The Court further explained that:

> Nothing we have said should be interpreted beyond the comparatively narrow
> confines of the instant case. Specifically, under usual construction loan terms
> and conditions, no lender should consider itself at risk if it elects not to
> generally inspect the progress of the construction of a project financed by the
> lender. Nor is a lender to consider itself at risk if it volitionally elects to inspect
> and does so negligently or ineffectively.

*Id.*  In other words, *Davis* stands for the very narrow holding that in the context of construction

loans (which is not the context in which Plaintiffs received their loans from Irwin or

Countrywide), where the lender assumes the responsibility to distribute the proceeds of the loan

throughout the course of the construction (which is not alleged to be the case here) and the

borrower notifies the lender of construction defects and requests that the lender suspend payment

until those deficiencies are cured (which is also not alleged to have occurred here), the lender

may be liable to the borrower if the borrower is damaged due to the lender's actions in

continuing to distribute loan proceeds in complete disregard of the borrower's complaints and

without genuinely attempting to ascertain the truth of the borrower's complaints.  *Davis* does not

impose a general duty on lenders to inspect for construction defects.

### 2.   Defendants Complex Solutions, Manietta and Cannon

Complex Solutions does not challenge Plaintiffs' negligence claim in its motion to

dismiss.  Accordingly, Plaintiffs' claim of negligence against Manietta, Complex Solutions and Cannon remain.

**C.    Fourth Claim for Relief:  Negligent Misrepresentation**

      **1.    Defendants Irwin and Countrywide**

> To state a claim for negligent misrepresentation, a plaintiff must plead:
> 1) a representation that is false; 2) that the representation was made in the course of the defendant's business or in any action in which he has a pecuniary interest; 3) the representation was for the guidance of others in their business transactions; 4) the representation was justifiably relied upon; 5) that such reliance resulted in pecuniary loss to the relying party; and 6) that the defendant failed to exercise reasonable care or competence in obtaining or communicating the information.

*G.K. Las Vegas Limited Partnership v. Simon Property Group, Inc.*, 460 F. Supp. 2d 1246, 1262 (D. Nev. 2006).  Nevada also recognizes negligent misrepresentation by nondisclosure when the defendant had a duty to speak.  *In re Agribiotech, Inc.*, 291 F. Supp. 2d 1186, 1191–92 (D. Nev. 2003).  However, such a duty generally only exists when there is a special relationship between the parties. *Id.* at 1191–92.  A negligent misrepresentation claim must be pled with particularity as required by Fed. R. Civ. P. 9(b). *Id*; *accord Gowen v. Tiltware LLC*, No. 2:08-cv-01581-RCJ-RJJ, 2009 WL 1441653, at *9 (D. Nev. May 19, 2009).

      While Plaintiffs argue that their allegations contain affirmative misrepresentations as well as failures to disclose, a review of the TAC does not reveal any language to support their claim. Plaintiffs' allegations in paragraph 131 of the TAC state that Countrywide owed Plaintiffs a duty to accurately disclose all facts.  The following paragraph alleges that Countrywide breached the "foregoing duty" by failing to disclose defects, inadvertently using and ratifying appraisals, and failing to disclose that appraisals were inaccurate.  Plaintiffs argue that using and ratifying appraisals is an affirmative misrepresentation.  However, in their TAC the use and ratification of the appraisals is actually based on the duty to disclose as alleged in the TAC.  The same is true of the allegations against Countrywide and Irwin in paragraphs 133 and 134 of the TAC.  Therefore,

these claims will only survive if Plaintiffs have alleged a special relationship between the parties.

Defendants argue that a lender-borrower relationship is not a special relationship that would impose a duty to speak in situations of non-disclosure.  *See Gomez,* 2009 WL at * 5; *Yerington Ford*, 359 F.Supp.2d at 1090 ("the Court is satisfied that the Nevada Supreme Court would hold that an arms-length lender-borrower relationship is not fiduciary in nature, absent exceptional circumstances").  Defendants assert that since there is no special relationship arising out of an ordinary creditor-debtor relationship, Plaintiff must set forth specific facts that would lead a reasonable jury to find the existence of that relationship.  The Nevada Supreme Court has fashioned the *Mackintosh* test as a means of determining whether a special relationship exists.  Under that test, for a jury to conclude that a special relationship existed between Plaintiffs and Irwin/Countrywide, it would need to find (1) that the conditions would reasonably have caused Plaintiffs to place special trust and confidence in Irwin/Countrywide, and (2) that Irwin/Countrywide would reasonably have known of this confidence. *Mackintosh*, 935 P.2d at 1160.

This Court agrees with other cases in the Ninth Circuit to conclude that the Nevada Supreme Court would not generally recognize a special relationship as a matter of law between a lender and borrower or between a lender and guarantor.  *See Giles v. General Motors Acceptance Corp.*, 494 F.3d 865 (9th Cir. 2007) (citing *Yerington Ford*, F.Supp.2d at 1088-90, 1092).  Thus, if a special relationship does exist between the parties in this case, it exists because of the specific actions and particular situations of the parties.  However, Plaintiffs' TAC is void of any facts demonstrating that Plaintiffs placed a special trust and confidence in Irwin or Countrywide, or that Irwin or Countrywide would have known of this confidence.  Accordingly, these claims are dismissed against Irwin and Countrywide.

## 2.     Defendants Complex Solutions and Cannon

Complex Solutions does not challenge Plaintiffs' negligent misrepresentation claim in its

motion to dismiss.  Cannon joined Countrywide's motion to dismiss, so the Court assumes that Cannon challenges Plaintiffs' negligent misrepresentation claim on the same grounds as Countrywide.

Plaintiffs allege that Cannon had a duty to disclose all material facts that they knew or should have known would have adversely affected the HOA's finances or that of the unit owners. The TAC goes on to allege what Cannon failed to disclose.  As the managing agent of the subject property it would be reasonable to infer that a special relationship existed between Cannon and the Plaintiffs.  *See Giles*, 494 F.3d at 881 (To prove a special relationship exists, the plaintiff must show a reasonable person under the circumstances would impart special confidence and the trusted party reasonably should have known of the confidence.

Accordingly, the Court finds that Plaintiffs have adequately stated a claim of negligent misrepresentation against Cannon.

**D.    Fifth Claim for Relief:  Breach of Contract**

      **1.    Defendants Irwin and Countrywide**

To state a claim for breach of contract a plaintiff must allege (a) the existence of a valid contract and (b) defendant's breach of that contract, and (c) damages to the plaintiff resulting from the breach. *Brown v. Kinross Gold U.S.A., Inc.*, 531 F.Supp.2d 1234, 1240 (D. Nev. 2008). Plaintiff alleges (1) that they entered into valid contracts with Defendants Irwin and Countrywide, (2) that these contracts contained a duty to disclose all material facts and that Defendants did not disclose these facts, and (3) that Plaintiffs were damaged by this breach.

Defendants argue that the TAC does not identify the contracts at issue and, therefore, Plaintiffs do not state a claim for breach of contract.  It is true that the TAC does not give any specifics about these alleged contracts.  One could assume, based on the allegations in the TAC that the contracts are the notes and deeds of trusts.  However, Plaintiffs note that the alleged contracts could also include purchase agreements.  One can hardly say that Defendants are put on

notice when Plaintiffs are not clear about which contracts have been breached.

Plaintiffs also fail to allege any specific facts about which material terms were not disclosed.  This is important because which terms Plaintiffs may allege are material may not be material to the finder of fact.  Plaintiffs' failure further compromises Defendants' ability to defend against such allegations.  Plaintiffs argue that they need only give a "short and plaint statement of the claim showing that the pleader is entitled to relief."  Here, however, Plaintiffs scant descriptions of the facts that have led to a breach of contract claim does not "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 129 S.Ct. at 1950.  It does not, as required by Rule 8, show that the pleader is entitled to relief. *Id.*

At this point in the proceeding Plaintiffs have had the opportunity to amend the complaint several times.  Plaintiffs have defended their breach of contract claims various times from various Defendants.  Accordingly, it appears clear, at this point, that allowing Plaintiffs the opportunity to amend these claims against Defendants Irwin and Countrywide would be futile.  Accordingly, the breach of contract claims alleged against Irwin and Countrywide are dismissed.

### 2.      Defendants Complex Solutions, Manietta and Cannon

Defendants Copper Sands Realty, Pacifica Enterprises and Pacifica Real Estate Services retained Defendant Complex Solutions to perform a reserve study of the property. (TAC at ¶ 72.)  Defendant Complex Solutions entered into contracts, of which Plaintiffs were the intended beneficiaries, whereby Defendants were required to accurately disclose reserve requirements of the property (TAC at ¶148).  Complex Solutions allegedly breached the contract by failing to accurately disclose reserve requirements for the property (TAC at ¶149).

The Court finds that Plaintiffs have stated a valid claim for a breach of contract against Complex Solutions.  Here, there is only one possible contract at issue.  The purpose of the contract was to perform a reserve study.  If the reserve study was done inaccurately as alleged, there could be a breach of the contract.  There are enough facts alleged to lead to this plausible

inference.

Likewise, the allegations against Cannon and Manietta are sufficient to state a claim of breach of contract.  Both of these Defendants are only alleged to have entered into one contract and the TAC outlines specifically what Defendants were required to do under the contract. Plaintiffs allege that Cannon and Manietta failed to perform the services agreed to and therefore breached their contacts.

**E.      Seventh Claim for Relief:  Breach of Implied Warranties**

**1.      Defendants Irwin and Countrywide**

Defendant Countrywide argues that Plaintiffs fail to state a claim for breach of implied warranties because (1) Nevada does not recognize a claim for implied warranty of quality, fitness and/or merchantability in the construction and sale of a condominium conversion, or for underwriting or financing of loans related thereto; and (2) lenders in the context of underwriting and funding loans make no implied warranties.  Plaintiffs' TAC however does not allege that Countrywide warranted the quality of the property, but rather that Countrywide warranted the quality of its services.  Plaintiffs entered into service contracts with Countrywide where Countrywide was to provide the service of giving Plaintiffs loans to buy property.  Plaintiffs allege that Countrywide impliedly warranted to perform these services and then breached these warranties by failing to use reasonable care and skill in discovering and disclosing defects in the property.

Plaintiffs explain that pursuant to Nevada law, every contract that involves the rendering of services includes the implied promise to perform those services with reasonable care, skill, and safety.  Plaintiffs cite to a Nevada case, *Daniel, Mann, Johnson & Mendenhall v. Hilton Hotels Corp.*, 98 Nev. 113, 642 P.2d 1086 (1982), where the court held that there is an implied duty to perform the services in a workmanlike manner.  In that case, Hilton hired an engineering firm to perform a survey for the construction of an addition to Hilton's hotel.  The work that had been

performed by the firm was not done correctly and needed to be redone.  Hilton sued for the cost of the remedial work.  The Nevada Supreme Court upheld the jury instruction that charged that there existed an implied duty to perform in a workmanlike manner.

Nevertheless, the facts of *Hilton Hotels* is distinguishable from the facts of this case involving Countrywide.  The Nevada cases that deal with claims of implied warranty of quality, fitness and/or merchantability deal with construction, manufacturing or engineering. *See Radaker v. Scott*, 855 P.2d 1037 (Nev. 1993) (recognizing a homeowner has a right to assert a cause of action for breach of an implied warranty of habitability due to defect in construction.)  No cases applying Nevada law that have held that lenders in the context of underwriting and funding loans make implied warranties for their services.  This Court does not accept Plaintiffs' invitation to extend the implied warranty to perform services "in a workmanlike manner" to loan providers. There simply does not appear to be any basis for it in Nevada law.  Accordingly, this claim is dismissed against Defendant Countrywide.

Similarly Defendant Irwin also argues that it did not give any implied warranties for its work in preparing loan applications to give to Fannie Mae for loan approval.  For the same reasons, this Court does not see how the implied warranty to perform services in a workmanlike manner recognized by Nevada law applied to this type of situation.  Accordingly, the Court dismisses this claim against Defendant Irwin.

### 2.    Defendants Complex Solutions, Manietta and Cannon

Defendant Complex Solutions also argues that there is no implied warranty for the services it provided.  Complex Solutions was hired to do a reserve study of the financial reserves needed to repair, replace and restore major components of the condominium's common elements. Complex Solutions' role was not to actually perform any repairs but only to discover and disclose the defects.  Since Complex Solutions was not hired to actually perform any services of construction, manufacturing or engineering, the Court refuses to extend this cause of action for

the same reasons it would not extend the cause of action for Irwin or Countrywide.  Accordingly, Complex Solutions' motion to dismiss Plaintiffs' claim of breach of the implied warranty is GRANTED.

Defendant Cannon was hired to be the HOA's managing agent with respect to the property.  The allegations surrounding Cannon's alleged breach of implied warranty deal with the services they were to provide, such as discovery and disclosure of defects, maintenance and repair of the property and collection of assessments in an adequate amount to maintain reserves.  The allegations do not disclose if Cannon was supposed to repair the property itself or if its role was simply to coordinate maintenance and repair.  Therefore, the Court will allow this claim to remain so that it can be clarified if there were any repairs required to be completed by Cannon.  If so, then that work could conceivably carry with it an implied warranty to perform the work in a workmanlike manner.  Accordingly, Cannon's motion to dismiss Plaintiffs' claim of breach of the implied warranty is DENIED.

Defendant Manietta was retained to perform electrical work.  Under *Hilton Hotels*, Manietta would have a duty to perform that electrical work in a workmanlike manner.  Accordingly, Manietta's motion to dismiss Plaintiffs' claim of breach of the implied warranty is DENIED.

**F.    Sixteenth Claim for Relief:  Fraud**

**1.    Defendants Irwin and Countrywide**

To state a claim for fraud, a plaintiff must allege that: (1) defendant made a false representation; (2) defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation); (3) defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) damage to the plaintiff resulting from such reliance. *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992).  Fraud claims must be stated with particularity.

Fed. R. Civ. P. 9(b).  As with the negligent misrepresentation claims a duty to disclose will result in liability for fraud if there is a special relationship between the parties. *See Mackintosh*, 935 P.2d at 1158.

Unlike the negligent misrepresentation claims, Plaintiffs do allege affirmative actions taken by Irwin and Countrywide to commit fraud against Plaintiffs.  For example, in paragraph 214 of the TAC, Plaintiffs allege that Irwin submitted false and inaccurate reports to Fannie Mae.  Plaintiffs allege that this was done in order to get Fannie Mae to approve loans for prospective buyers.  Plaintiffs then relied on these misrepresentations when obtaining the loans.  Plaintiffs allege that Countrywide made a false representation by ratifying the appraisals knowing that the appraisals were inaccurate.  Plaintiffs allege that Countrywide intended to induce Plaintiffs into relying on the appraisals because it would further their agenda to profit from the inaccurately high values.  Finally, Plaintiffs allege that because Plaintiffs relied on Countrywide's ratification of the appraisals they were injured.

The Court finds that Plaintiffs' allegations against Irwin and Countrywide state a claim of fraud and meet the pleading standards of Fed. R. Civ. P. 9(b).   Accordingly, Irwin and Countrywide's motion to dismiss Plaintiffs' fraud claim is DENIED.

**G.     Seventeenth Claim for Relief:  Consumer Fraud**

**1.     Defendants Irwin and Countrywide**

Consumer fraud is just a statutory version of common law fraud.  Plaintiffs state a claim for the same reasons as discussed above.  Accordingly, Irwin and Countrywide's motion to dismiss Plaintiffs' consumer fraud claim is DENIED.

**H.     Twenty-first and Twenty-second Claims for Relief:  N.R.S. 207.400(1)(d, f, j)**

**1.     Defendants Irwin and Countrywide**

In Nevada, a civil RICO action must be pled with the same degree of specificity that is called for in a criminal indictment or information.  *Hale v. Burkhardt*, 764 P.2d 866, 869 (Nev.

1988); *See also*, *Josephson v. EMC Mortg. Corp.*, No. 2:10-CV-336, 2010 WL 4810715, *3 (D.Nev. Nov. 19, 2010) ("A claim for civil racketeering must be plead with specificity."); *Vo v. American Brokers Conduit*, No. 3:09-CV-00654, 2010 WL 4449235, *2 (D.Nev. Oct. 29, 2010) (same); *Eastwood v. Lehman Bros. Bank, FSB*, No. 3:09-CV-00656, 2010 WL 2696479, *2 (D.Nev. Jul. 02, 2010) (same). "A civil RICO pleading must, in that portion of the pleading which describes the criminal acts that the defendant is charged to have committed, contain a sufficiently 'plain, concise and definite' statement of the essential facts such that it would provide a person of ordinary understanding with notice of the charges." *Hale*, 764 P.2d at 869– 70. This means the complaint should provide the information as to "when, where [and] how" the underlying criminal acts occurred. *Id.* at 869.

Plaintiffs' twenty-first cause of action alleges Defendants violated subsections (d) and (f) of N.R.S. 207.400(1). Under N.R.S. 207.400(1)(d) it is unlawful for a person to intentionally organize, manage, direct, supervise, or finance a criminal syndicate. Under N.R.S. 207.400(1)(f), it is unlawful for a person to furnish advice, assistance or direction in the conduct, financing or management of the affairs of the criminal syndicate with the intent to promote or further the criminal objectives of the syndicate. Plaintiffs' twenty-second cause of action alleges Defendants violated N.R.S. 207.400(1)(j) which makes it unlawful to conspire to violate any of the provisions of this section.

Plaintiffs allege that Defendant Countrywide assisted in the criminal conduct by deliberately disseminating false information, ratifying false appraisals and by financing the criminal syndicate because it was providing the loans to the Plaintiffs. *See Lester v. Percudani*, 556 F. Supp. 2d 473, 487 (M.D. Pa. 2008) (lender which provided financing for most of developer's home sales, despite knowing that developer was using inflated appraisals, was properly subject to RICO conspiracy claim under federal counterpart to NRS 207.400(1)(j) on the ground that it deliberately furthered developer's RICO enterprise in order to advance its own

objective of selling inflated mortgages on the secondary market: "[r]easonable jurors could conclude that Chase's lending practices facilitated a scheme by the Percudani defendants to artificially increase home prices"); *see also Eva v. Midwest Nat'l Mortg. Bank, Inc.*, 143 F. Supp.2d 862 (N.D. Ohio 2001) (borrowers' complaint stated RICO claim against lenders allegedly engaged in predatory lending where borrowers alleged, inter alia, that lenders solicited inflated appraisals of homes securing loans so that higher fees could be charged and inflated loans sold on the secondary market).  The Court finds that Plaintiffs have alleged sufficient facts to state a claim that Countrywide assisted or financed a criminal syndicate under N.R.S 207.400(d) and (f).

Plaintiffs allege that Irwin assisted in the criminal conduct of Defendants Robert Colucci, Dario Deluca, Renato Deluca, Shawn Heyl, Copper Sands Realty, LLC, Pacifica Enterprises, Inc., Pacifica Marketing Services, LLC, Premier Communities, Inc. and other Alter Ego Defendants by submitting false and misleading project approval application to Fannie Mae. Irwin argues that seeking Fannie Mae approval is not a predicate crime.  However, obtaining the approval by false pretenses would be a predicate crime. *See* N.R.S. 205.380(1).

Accordingly the Court finds that there are enough facts alleged to state a claim under the RICO statutes.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Irwin Mortgage Corporation's ("Irwin") Motion to Dismiss (ECF No. 160) Defendant Countrywide Home Loans, Inc.'s ("Countrywide") Motion to Dismiss (ECF No. 162) and Defendant Complex Solutions, Limited's ("Complex Solutions") Motion to Dismiss (ECF No. 169) are **GRANTED in part and DENIED in part** as follows:

Plaintiffs' First Claim for Relief, Negligence, is **DISMISSED with respect to Defendants Irwin and Countrywide**;

Plaintiffs' Fourth Claim for Relief, Negligent Misrepresentation, is **DISMISSED with respect to Defendants Irwin and Countrywid**e;

Plaintiffs' Fifth Claim for Relief, Breach of Contract, is **DISMISSED with respect to Defendants Irwin and Countrywide**; and

Plaintiffs' Seventh Claim for Relief, Implied Warranty, is **DISMISSED with respect to Defendants Irwin, Countrywide and Complex Solutions**.

DATED this 20th day of March, 2012.

_____
Gloria M. Navarro
United States District Judge