UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| COPPER SANDS HOMEOWNERS ASSOCIATION, INC., *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> COPPER SANDS REALTY, LLC, *et al.*, <br><br> Defendants. | Case No.: 2:10-cv-00510-GMN-GWF <br><br> **ORDER** |

## INTRODUCTION

Before the Court is Defendant Brent Jones Services, Inc.'s Motion for Summary Judgment (ECF No. 249). Plaintiffs, Copper Sands Homeowners Associations, Inc., et al., filed a Response (ECF No. 262) and Defendant filed a Reply (ECF No. 268).

Also before the Court is Defendant Brent Jones', an individual, Motion for Summary Judgment (ECF No. 297). Plaintiffs filed a Non-Opposition to Brent Jones' motion (ECF No. 302). Accordingly, the Court grants Defendant Brent Jones' Motion for Summary Judgment (ECF No. 297).

## FACTS AND BACKGROUND

This action is based on alleged misconduct in the conversion, sale, and financing of a condominium project. Plaintiffs are unit owners in the condominium project and its homeowners' association. The developer of the condominiums was Defendant Copper Sands Realty, LLC, which was managed by Defendants Robert Colucci and Dario Deluca. The Third Amended Complaint (TAC) names over thirty defendants who were allegedly involved in some aspect of the conversion of the property, including the sale and financing of the condominiums and the appraisal or management of the property.

Brent Jones Services, Inc. ("BJS") was contracted by Countrywide Home Loans, Inc. (a lender for the property) to perform appraisals for different units within the condominium complex. (TAC ¶71, ECF No. 154.)  BJS performed 55 appraisals, but only four appraisals for named Plaintiffs in the action. (BJS's Responses to Interrogatories, Ex. A attached to Thome Decl., ECF No. 249–1; *See* Ex. B, Ex. C, Ex. D and Ex. E to Thome Decl. ECF Nos. 249–2 through 249–5.)[1] Plaintiffs allege that BJS negligently prepared appraisals that did not account for the alleged construction defects, despite the fact that it was not provided with disclosures concerning the defects by its client, Countrywide Home Loans, Inc. (*See* TAC.)

Each Plaintiff executed a "Joint Purchase Agreement and Escrow Instructions" when they purchased their unit, <u>prior to the appraisal being performed.</u> (*See* Purchase Agreement with Addendums, Ex. G attached to Thome Declaration, ECF No. 249–7.)  The Purchase Agreement provides that the sale is on an "AS-IS" basis with no warranties.

Plaintiffs allege three causes of action against BJS: (1) negligence, (2) negligent misrepresentation, and (3) breach of implied warranties.  BJS seeks summary judgment on the following five grounds: (1) the thirteen Plaintiffs that did not have appraisals performed of their units by BJS have no standing to sue BJS on any claim as BJS had no duty to those Plaintiffs; (2) BJS also did not owe a duty to the Plaintiffs to show units were appraised by BJS and those Plaintiffs cannot establish reliance and damages; (3) there is no breach of warranty attributable to an appraisal; (4) the HOA does not have standing to sue BJS; and (5) the statute of limitations has run on Plaintiffs' claims.

## DISCUSSION

**A.     Legal Standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the

---

[1] Apparently one of the named Plaintiffs, Bojan Nenadic has decided not to participate in the lawsuit and had not responded to discovery or appeared for a noticed deposition. (*See* Correspondence from Counsel, Ex. F to Thome Decl., ECF No. 249–6.)

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

*Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**B.     Analysis**

**1.     Negligence and Negligent Misrepresentation**

Under Nevada law, to establish a claim for professional negligence, a plaintiff must show: (1) the defendant had a duty to use the skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) the defendant breached that duty; (3) the breach proximately caused the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. *Morgano v. Smith*, 879 P.2d 735, 738 (Nev. 1994).

To state a claim for negligent misrepresentation, a plaintiff must plead:

> (1) a representation that is false; (2) that the representation was made in the course of the defendant's business or in any action in which he has a pecuniary interest; (3) the representation was for the guidance of others in their business transactions; (4) the representation was justifiably relied upon; (5) that such reliance resulted in pecuniary loss to the relying party; and (6) that the defendant failed to exercise reasonable care or competence in obtaining or communicating the information. *G.K. Las Vegas Limited Partnership v. Simon Property Group, Inc.*, 460 F. Supp. 2d 1246, 1262 (D. Nev. 2006). Nevada also recognizes negligent misrepresentation by nondisclosure when the defendant had a duty to speak. *In re Agribiotech, Inc.*, 291 F. Supp. 2d 1186, 1191–92 (D. Nev. 2003). Such a duty generally only exists when there is a special relationship between the parties. *Id.* at 1191–92.

Nevada recognizes a claim for appraiser negligence in the context of a lender suing the appraiser it has hired and relied on to fund its transaction. *Goodrich & Pennington Mortgage Fund, Inc. v. J.R. Woolard, Inc.*, 101 P.3d 792 (Nev. 2004). Nevada courts have not specifically dealt claims brought by a borrower against an appraiser that was hired by the lender. Courts in other jurisdictions are split on the issue. For example, in *Decatur Ventures, LLC v. Daniel*, 485 F.3d 387, 390 (7th Cir. 2007), the court held that the appraiser owed no duty to the borrower, only to the lender. Some courts recognized economic realities and consider whether a buyer was aware of the appraisal when it purchased the property and whether a purchase agreement is contingent upon the appraisal, and permit borrowers who knew and or actually relied on an appraisal to file suit. *See Sage v. Blagg Appraisal Co.*, 209 P.3d 169, 170–176 (Ariz. Ct. App. 2009)(appraiser retained by a lender in connection with a purchase-money mortgage transaction owes a duty of care to the borrower/buyer); *compare with Kuehn v. Stanley*, 91 P.3d 346, 350 (Ariz. Ct. App. 2004)(Plaintiffs could not demonstrate reliance because they were contractually bound to purchase the property, contingent upon qualifying for funding, before they received the appraisal. Therefore, Plaintiffs have no claim.) Other courts, applying the foreseeability rules of the Restatement (Second) of Torts §522 (1977) hold that appraisers owe a duty to borrowers if the appraiser knew the information was intended to benefit the third party borrowers. *See Soderberg v. McKinney*, 44 Cal.App.4th 1760, 52 Cal.Rptr.2d 635, 639–42 (1996)(a negligent misrepresentation claim was sufficient if the third party belongs to a particular group or class which the information was intended to benefit); *see also Stotlar v. Hester*, 582 P.2d 403 (N.M. App. 1978)(same).

Nevada has adopted Restatement (Second) of Torts § 552. *See Stremmel Motors, Inc. v. First Nat'l Bank of Nev.*, 575 P.2d 938, 940 (1978). Therefore, this Court finds that it would be proper to apply the Restatement to the facts of this case. Accordingly, in some circumstances appraisers could owe a duty of care to borrowers.

Restatement § 552 provides:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
    (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
    (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

In this case, BJS does not explain whether or not they intended for the borrowers to get the appraisal reports or if it knew that the lender intended to give the reports to the borrowers. However, if there is no evidence of reliance by the Plaintiffs on the appraisals, then the negligence and negligent misrepresentation claims fail. *See Williams v. United Community Bank*, -- S.E.2d --, at *6 (N.C.App. 2012)(summary judgment on negligence and negligent misrepresentation claims was affirmed because plaintiffs failed to show that they relied on the appraisals).

Justifiable reliance, under Nevada law, requires a showing by the plaintiff that alleged false representation played a material and substantial part in leading the plaintiff to adopt his or her particular choice. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1155 (9th Cir. 2005)(plaintiff was required to show she actually read or heard the alleged misrepresentation to establish the justifiable reliance element in a fraud claim)(citing *Nevada Power Co. v. Monsanto Co.*, 891

F.Supp.1406, 1414 (D.Nev. 1995)). If a plaintiff was not in any way influenced by the misrepresentation and would have done the same thing without it for other reasons, his loss is not attributed to the defendant. *Blanchard v. Blanchard*, 839 P.2d 1320, 1322 (Nev. 1992)(explaining how justifiable reliance element is satisfied in an intentional misrepresentation claim).

BJS argues that the essential element of reliance is absent because the evidence demonstrates that Plaintiffs did not rely on the appraisals at all. Only four of the Plaintiffs' units were appraised by BJS: (1) Zui Yi Qiu, Unit 2115 (2115 Appraisal Report, Ex. B attached to Thome Decl., ECF No. 249–2); (2) David Ferguson, Unit 1074 (1074 Appraisal Report, Ex. C attached to Thome Decl., ECF No. 249–3); (3) Bojan Nenadic, Unit 1010 (1010 Appraisal Report, Ex. D attached to Thome Decl., ECF No. 249–4); and Richard Dressler, Unit 2089 (Dressler Settlement Statement, Ex. E attached to Thome Decl., ECF No. 249–5[2]). Mr. Nenadic has decided not to participate in the lawsuit as represented by his counsel. (*See* Correspondence from counsel, Ex. F attached to Thome Decl., ECF No. 249–6.)

BJS argues Plaintiff Qiu, who does not read English, testified that although she received a copy of the appraisal, she does not read English and she could not remember if she turned the appraisal over to someone who could. However, this does not appear in the copy of the deposition transcript provided to the Court. BJS cites to page 40 of the transcript but that page has not been properly attached. The portion of the transcript that is provided demonstrates that Qiu merely stated she did not remember seeing the appraisal report or who performed the appraisal. (Qiu Deposition, Ex. K attached to Thome Decl. 40:18–23, 43:13–16, ECF No. 249–12.) While failing to remember whether she saw the appraisal report or who performed the appraisal does not sufficiently establish that Qiu failed to rely upon the appraisal report, it does

---

[2] BJS was unable to locate Mr. Dressler's appraisal so instead attached the settlement statement for his home reflecting that BJS appraised the unit.

seriously question whether or not Plaintiffs can satisfy the element of reliance.  Plaintiffs do not counter with any evidence that Qiu actually did rely on the appraisal report.

Plaintiff Dressler testified at his deposition that he did not know about any appraisals being done on the property and never saw an appraisal before he purchased his property. (Dressler Depo., Ex. I attached to Thome Decl. 47:4–48:3; 59:21–60:4, ECF No. 249–10.) Plaintiff Ferguson designated his daughter and co-purchaser Sacha Ferguson as his PMK concerning the condominium and she testified that she did not know if her unit was appraised and did not remember seeing any appraisals. (Ferguson Depo., Ex. J attached to Thome Decl. 33:3–18; 39:4–8, ECF No. 249–11.)  BJS's evidence demonstrates that Plaintiffs Dressler and Ferguson could not have relied on the appraisal reports when they didn't even know they existed or review them before they purchased the units.

For the Plaintiffs whose units BJS did not appraise, BJS presents evidence that these Plaintiffs either did not receive, did not review, or do not remember the appraisals done to their units by the company(ies) hired to do those appraisals.[3]  Although this does not affirmatively

---

[3] • Plaintiff Charles Wood had an appraisal by BC Appraisal, and he did not remember receiving a copy. (Wood Depo., Ex. L–1 attached to Thome Decl. 66:13–21, ECF No. 249–13.)
• Plaintiff Myra Schultz did not know who appraised her property and in any event, never saw the appraisal. (Schultz Depo. Ex. L–2 attached to Thome Decl. 24:2–16; 26:4–10; 30:21–25, ECF No. 249–14.)
• Plaintiff Doran Gerby owns ten units in the Complex with his wife Rachel Gerby, that they did even begin purchasing until 2008.  They paid cash for all of the units, thus none were appraised. (Gerby Depo. Ex. L–3 attached to Thome Decl. 15:15–21; 17:8–13; 25:16–28, ECF No. 249–15.)
• Plaintiff Catalin Nistor had an appraisal by Cornerstone Appraisal, but could not remember anything about it. (Nistor Depo., Ex. L–4 attached to Thome Decl. 17:22–25; 25:18–23; 51:1–9, ECF No. 249–16.)
• Plaintiff Marcia Jarrett purchased two units, but transferred them to an LLC. She never saw the appraisals before closing, but they were performed by John Winslow and Home Focus Services. (Jarrett Depo., Ex. L–5 attached to Thome Decl. 20:5–9; 42:20–21; 46:8–47:13; 65:18–23; 67:7–16; 90:3–20, ECF No. 249–17.)
• Plaintiff Steven Gazza's unit has been foreclosed upon. After purchase, however, it was appraised by Mortgage Loan Specialists but he did not receive the appraisal. (Gazza Depo., Ex. L–6 attached to Thome Decl. 13:7–20;14:4–8; 38:5–19, ECF No. 249–18.)
• Plaintiff Everett Croxson purchased his unit for cash, and did not have an appraisal. (Croxson Depo., Ex. L–7 attached to Thome Decl. 12; 23; 30, ECF No. 249–19.)
• Plaintiff Hilary Garber purchased a unit in July of 2009, for cash without an appraisal. (Garber Depo., Ex. L–8 attached to Thome Decl. 13:20–14:2; 18:17–18; 23:11–16, ECF No. 249–20.)
• Plaintiff Arlene Marentic's unit was appraised by Kelly Wade. She never saw the appraisal. (Marentic Depo., Ex. L–9 attached to Thome Decl. 51:11–17, ECF No. 249–21.)
• Plaintiff Richard Emanuele had an appraisal, but did not know who did it and never saw it. (Emanuele Depo., Ex. L–10 attached to Thome Decl. 50:1–5; 51:11–52:9, ECF No. 249–22.)

1 show that those Plaintiffs never received, and therefore could not have relied on, the BJS
2 appraisals it shifts the burden to Plaintiffs to provide some evidence that a genuine dispute exists
3 regarding their reliance.

4     A moving party without the ultimate burden of persuasion at trial must carry its initial
5 burden or production by either: (1) producing evidence negating an essential element of the
6 nonmoving party's case; or (2) show that the nonmoving party does not have enough evidence
7 of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.
8 *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir.
9 2000). BJS does both. BJS's production of evidence demonstrating that Plaintiffs did not see or
10 know about its appraisals negates the element of justifiable reliance. BJS's argument that
11 Plaintiffs who did not have appraisals done by BJS could not have relied on them properly
12 brings into question whether or not the nonmoving party has evidence to prove that these
13 Plaintiffs could have possibly relied on the BJS appraisals. Thus, for this claim to survive,
14 Plaintiffs must come forth with some evidence to create a genuine issue of material fact for trial.

15     Plaintiffs do not and instead only make a legal argument that direct reliance is not always
16 essential. In *Wilson v. Parisi*, 549 F.Supp.2d 637, 668 (M.D. Pa. 2008) the court found that
17 although the plaintiffs never saw the appraisal, they relied on the developers and appraiser to
18 furnish an appraisal that complied with industry requirements and standards. However, the
19 *Wilson* case is distinguishable because it dealt with claims of RICO violations related to the
20 Pennsylvania Unfair Trade Practices and Consumer Protection Law. As revealed in the case
21 review above, a crucial element under the Restatement (Second) of Torts § 552 is direct
22 reliance; it is required in order to establish whether an appraiser owes a duty of care to a third
23 party borrower.

24     Accordingly, the Court finds that Summary Judgment should be entered in favor of BJS
25 on Plaintiffs' negligence and negligent misrepresentation claims.

### 2. Breach of Implied Warranty

This Court has already explained in a previous order in this case that it will not extend Plaintiffs' invitation to extend the implied warranty to perform services in a workmanlike manner to loan providers. (*See* Order, ECF 407). For the same reasons, this Court will not extend the implied warranty to perform services in a workmanlike manner to an appraisal of property. The only Nevada cases on point applied the cause of action to services in construction, manufacturing or engineering. *See Radaker v. Scott*, 855 P.2d 1037(Nev. 1993); *Daniel, Mann, Johnson & Mendenhall v. Hilton Hotels Corp.*, 98 Nev. 113, 642 P.2d 1086 (1982). Accordingly, the Court dismisses this cause of action against BJS.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Brent Jones Services, Inc.'s Motion for Summary Judgment (ECF No. 249) is **GRANTED in part**.

Summary Judgment is **GRANTED in favor of Brent Jones Services, Inc. on Plaintiffs' claims of negligence and negligent misrepresentation.**

Plaintiffs' claim of breach of implied warranty is **DISMISSED against Brent Jones Services, Inc.**

**IT IS FURTHER ORDERED** that Defendant Brent Jones' Motion for Summary Judgment (ECF No. 297) is **GRANTED**.

DATED this 20th day of March, 2012.

_____
Gloria M. Navarro
United States District Judge