# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

COPPER SANDS HOMEOWNERS
ASSOCIATION, INC., *et al.*,

               Plaintiffs,

   vs.

COPPER SANDS REALTY, LLC, *et al.*,

               Defendants.

Case No.: 2:10-cv-00510-GMN-GWF

**ORDER**

## INTRODUCTION

Before the Court is Defendant CS Consulting Service, LLC's Motion for Summary Judgment (ECF No. 250). Plaintiffs, Copper Sands Homeowners Associations, Inc., et al., filed a Response (ECF No. 261) and Defendant filed a Reply (ECF No. 266).

## FACTS AND BACKGROUND

This action is based on alleged misconduct in the conversion, sale, and financing of a condominium project. Plaintiffs are the unit owners in the condominium project and its homeowners' association. The developer of the condominiums was Defendant Copper Sands Realty, LLC, which was managed by Defendants Robert Colucci and Dario Deluca. The Third Amended Complaint names over thirty defendants who were allegedly involved in some aspect of the conversion of the property, including the sale and financing of the condominiums and the appraisal or management of the property.

On or about April 27, 2004, CS Consulting submitted a proposal to Pacifica Enterprises, a management company for the Developer of the Copper Sands Project, to conduct a reserve study for the subject property. (*See* Proposal, Ex. A attached to MSJ, ECF No. 250.) Plaintiffs were not a party to the Proposal and CS Consulting claims that the Plaintiffs were not an

intended beneficiary of the Proposal.  The Proposal clearly states that CS Consulting provides such a reserve study without any warranties or guarantees. (*See id.*)

Plaintiffs allege four causes of action against CS Consulting: (1) negligence, (2) negligent misrepresentation, (3) breach of contract, and (4) breach of implied warranties.  CS Consulting argues that the breach of contract claims must be dismissed because of lack of privity; that the tort claims are barred by the Economic Loss Doctrine; and that the claim of implied warranties fails because of the lack of contractual privity.

## DISCUSSION

**A.    Legal Standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that

party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**B.    Analysis**

**1.      Breach of Contract**

CS Consulting argues that the breach of contract claim must be dismissed because there is no contract between Plaintiffs and CS Consulting.  Furthermore, they argue, the contract between Pacifica Enterprises and CS Consulting was not intended for the benefit of Plaintiffs.

In Nevada, in order to enjoy the status of a third-party beneficiary to a contract, "there must clearly appear a promissory intent to benefit the third party . . . and ultimately it must be shown that the third party's reliance thereon is foreseeable." *Elizabeth E. v. ADT Sec. Sys. West Inc.*, 839 P.2d 1308, 1311 (Nev.1992). "Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement, to which he is not a party, he must, at least, show that it was intended for his direct benefit." *Olson v. Iacometti*, 533 P.2d 1360, 1364 (Nev.1975).

Plaintiffs argue that they were the intended beneficiary of the contract because the reserve study is required by statute for the benefit of unit owners. *See* N.R.S. 116.3115, 116.31152. Plaintiffs urge that it is appropriate to consider the statute and its purpose in determining third-party beneficiary status. *Secretary of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 706 (4th Cir. 2007); *Roedler v. Dep't of Energy*, 255 F.3d 1347, 1352 (Fed. Cir. 2001) (citing *Rendleman v. Bowen*, 860 F.2d 1537, 1541–42 (9th Cir. 1988) (when the contract terms are mandated by Congress, statutory intent is highly relevant to contractual interpretation)). "In some cases an overriding policy, which may be embodied in a statute, requires recognition of such a right without regard to the intention of the parties." Restatement (Second) of Contracts §302, Cmt. d (1981). Plaintiffs argue that in this case, the reserve study contract "was mandated by a statute whose exclusive purpose is to protect unit owners" and accordingly it has stated a claim for breach of contract. (Response, 6:17–18, ECF No. 261.)

N.R.S. Chapter 116 codifies Nevada's adoption of the Uniform Common Interest Ownership Act ("UCIOA"), an act adopted by the National Conference of Commissioners on Uniform State Laws. *Boulder Oaks Community Ass'n v. B & J Andrews Enterprises, LLC*, 215 P.3d 27 (Nev. 2009); *see* N.R.S. 116.001; A.B. 221, Summary of Legislation, 66th Leg. (Nev. 1991). N.R.S. Chapter 116 establishes the specific requirements for reserve studies in Nevada. Generally, the purpose of a reserve study is to give those overseeing the maintenance of the

property a better idea of what major expenses to expect and an educated estimate of when these expenses will occur in order to prevent the facilities from falling into disrepair due to poor financial planning.

Major revisions to NRS Chapter 116 were accomplished through S.B. 451 in the 70th Regular Session of the Legislature in 1999.  The Legislature changed NRS Chapter 116 from only applying new common-interest communities to existing common-interest communities because many of the existing common-interest communities had been "mismanaged with loosely written codes, covenants and restrictions."  Hearing on S.B. before the Assembly Comm. on Judiciary, 70th Leg. (Nev. May 14, 1999).  The apparent purpose of the changes was to provide protection to homeowners and remedy management problems of existing common-interest communities.

There is no case law directly on point; therefore, this appears to be an issue of first impression. When a federal district court is faced with an issue of first impression under state law, the court must use its best judgment to predict how the highest state court would resolve it "using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 865 (9th Cir.1996).  After reviewing the statute and legislative history of N.R.S. Chapter 116 the Court believes that the Nevada Supreme Court would find that the statute is meant to protect homeowners of common interest communities.  The requirement of a reserve study could only be meant to provide additional protection to the homeowners in common-interest communities.  Accordingly, third party beneficiary status to the contract between the managers and owners of a common-interest community and the reserve study specialist can be established by a homeowner because the homeowner is meant to benefit from the requirement of having a reserve study done.  Therefore, Plaintiffs have stated a claim for breach of contract and the Court denies CS Consulting's Motion for Summary Judgment on this claim.

### 2.    Implied Warranty

CS Consulting argues that Plaintiffs' claim for Breach of Implied Warranty fails because there is no privity of contract between the parties.  However, because the Court finds that Plaintiffs are a third party beneficiary to the contract this argument fails.

### 3.    Economic Loss Doctrine

The economic loss doctrine "bars unintentional tort actions when the plaintiff seeks to recover purely economic losses." *Terracon Consultants Western, Inc. v. Mandalay Resort Group*, 206 P.3d 81, 85 (Nev. 2009) (internal quotation marks omitted).  This means that "unless there is personal injury or property damage, a plaintiff may not recover in negligence for economic losses." *Id.* at 87; *see also Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 879 (9th Cir. 2007) ("Broadly speaking, Nevada applies the economic loss doctrine to bar recovery in tort for purely monetary harm in product liability and in negligence cases unrelated to product liability.").  The Nevada Supreme Court has applied the economic loss doctrine in product liability cases as well as negligence actions. *See Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 879 (9th Cir.2007).

The determination of whether the economic loss doctrine precludes a plaintiff's claim is a two-step process. The first step is to ascertain whether the damages are purely economic in nature. *Terracon*, 206 P.3d at 86. A purely economic loss is "the loss of the benefit of the user's bargain including pecuniary damage for inadequate value, the cost of repair and replacement of the defective product, or consequent loss of profits, without any claim of personal injury or damage to other property." *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev.2000) (overruled on other grounds by *Olson v. Richard*, 89 P.3d 31 (Nev.2004) (en banc)).  CS Consulting asserts that Plaintiffs' alleged damages are purely economic damages and do not involve bodily injury or other property damage. (*See* TAC, 14:26–15:3; 27:8, ECF No. 154.) Plaintiffs do not dispute that their damages are purely economic and therefore the economic loss

1  doctrine is applicable to Plaintiffs' requested damages.

2        The second step is to determine whether the economic loss doctrine applies to Plaintiffs'

3  claims of negligence and negligent misrepresentation.

4                    a.      <u>Negligence</u>

5        Plaintiffs argue that under Nevada law, where a statute imposes an independent duty, tort

6  claims involving a breach of that duty are not barred by the economic loss rule.  *G.K. Las Vegas*

7  *Ltd. P'ship v. Simon Prop. Group, Inc.*, 460 F.Supp.2d 1222, 1242 (D.Nev. 2006).  Plaintiffs

8  assert that NRS 116 imposes on CS Consulting a duty of care in conducting reserve studies.

9  Plaintiffs explain that CS Consulting is a reserve study specialist licensed under NRS Chapter

10  116A.  Unit owners' associations are required to establish and fund adequate reserves for the

11  repair, replacement and restoration of major components of the common elements, as well as

12  other portions of the community the association is obliged to maintain, repair, replace or restore.

13  N.R.S. 116.3115(2)(B).  In order to establish these reserves, the association must conduct

14  reserve studies. N.R.S. 116.31152(1)(a).  The public offering statement that must be issued by

15  persons selling units in common-interest communities must include a reserve study.  N.R.S.

16  116.4103(1)(e)(1); N.R.S. 116.4106(c).

17        Plaintiffs argue that to prevent harm to independent unit owners the statute requires that

18  the reserve studies be conducted only by reserve study specialists licensed under Chapter 116A

19  and that no one may act as a reserve study specialist without meeting the qualifications set by

20  the Nevada Commission for Common-Interest Communities and Condominium Hotels. N.R.S.

21  116A.420.  Plaintiffs conclude that this means that NRS 116 imposed a duty to exercise

22  reasonable care in conducting reserve studies.

23        However, the Court does not agree.  N.R.S. 116 only imposes duties on the management

24  and ownership of the common-interest community.  When the Legislature amended NRS

25  Chapter 116 which previously applied only to new common-interest communities to now

include pre-existing common-interest communities, the amendment sought to address the problems of many of the pre-existing common-interest communities which had been "mismanaged with loosely written codes, covenants and restrictions." Hearing on S.B. 451 before the Assembly Comm. on Judiciary, 70th Leg. (Nev. May 14, 1999). The legislative history reveals that the adoption of N.R.S. Chapter 116 was intended to remedy management problems of common-interest communities. N.R.S. 116.3115 imposes the duty on the association to establish adequate reserves. Thus, it is the ownership or management that has the duty of care to hire a competent reserve study specialist. Any obligations that arise on the part of the reserve study specialist arise through the contractual relationship between the ownership or management and the specialist and not because of the statute.

Since Nevada applied the economic loss doctrine to bar recovery in tort for purely monetary harm in negligence cases, summary judgment is granted in favor of CS Consulting on this claim. *Giles*, 494 F.3d at 879.

b. Negligent Misrepresentation

Generally, a claim for negligent misrepresentation is excluded from the economic loss doctrine. *Terracon*, 206 P.3d at 87. This is because negligent misrepresentation is a special financial harm claim for which tort recovery is permitted because without such liability the law would not exert significant financial pressures to avoid such negligence. *Id.* at 88.

Defendant CS Consulting does not provide any legal support or persuasive reasoning as to why Nevada's general rule that negligent misrepresentation is excluded from the economic loss argument should not apply. Instead, in its Reply, it merely focuses on the elements of a negligent misrepresentation claim and why Plaintiffs cannot satisfy those elements. However, as this argument was raised in the Reply, Plaintiffs did not have the opportunity to counter with any argument or evidence to negate CS Consulting's representations. Accordingly, the Court finds that there is a genuine dispute regarding Plaintiffs' negligent misrepresentation claim.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant CS Consulting Service, LLC's Motion for Summary Judgment (ECF No. 250) is **GRANTED in part and DENIED part**.

CS Consulting's request for summary judgment on Plaintiffs' claims for negligent misrepresentation, breach of contract and implied warranty is **DENIED**.

Summary Judgment is entered in favor of CS Consulting on Plaintiffs' claim for negligence.

**DATED** this 27th day of March, 2012.

_____
Gloria M. Navarro
United States District Judge