# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

COPPER SANDS HOMEOWNERS )
ASSOCIATION, INC., *et al.*, )
)
            Plaintiffs, )     Case No.: 2:10-cv-00510-GMN-NJK
    vs. )
) **ORDER**
COPPER SANDS REALTY, LLC, *et al.*, )
)
            Defendants. )
_____)

     Pending before the Court is the Motion for Summary Judgment (ECF No. 307) filed by Defendants Plaster Development Company and Jim Cerrone (collectively, "Defendants"). Plaintiff Copper Sands Homeowners Association, Inc. ("HOA") and the individually named Plaintiffs (collectively, "Plaintiffs") filed a Response (ECF No. 373) and Defendants filed a Reply (ECF No. 410).[1]

## I.     BACKGROUND

     This case arose from alleged defects in the Copper Sands condominiums ("Copper Sands") that were converted from apartment homes to condominiums and subsequently purchased by the individual plaintiffs. Copper Sands was constructed beginning in 1996 with Flamingo 94, LLC as the owner and with Defendant Plaster Development Company ("PDC") acting as the general contractor. At this time, PDC and Flamingo 94 shared common ownership.

     Upon completion of the construction in 1997, Flamingo 94 operated Copper Sands as apartment units for approximately eight months before selling the property to an unrelated entity, Copper Sands,

---

[1] Plaintiffs also filed a document styled "Plaintiff's Errata to Opposition to Defendants Plaster Development Company, Inc. and Jim Cerrone's Motion for Summary Judgment (#307)." (ECF No. 380.) However, Plaintiffs failed to provide any explanation of the differences between this additional filing and Plaintiffs' original Response to Defendants' Motion for Summary Judgment, (ECF No. 373). The only immediately apparent difference is the attachment of exhibits to this "Errata." Absent any explanation to the contrary, the Court will assume that the addition of exhibits is the only difference between the two documents.

LLC.  Copper Sands, LLC continued to operate Copper Sands as apartment homes until late 1997 when Claremont Sands, LLC purchased the property.  Claremont Sands continued to operate the property as apartment homes until May 2004 when it sold the property to Copper Sands Realty (the "Converter").  The Converter intended to convert the property from apartment homes to condominiums.

However, at the time the Converter purchased the property, it was unable to sell the converted units because, at that time, it lacked a Nevada broker's license that would permit it to sell the units.  Thus, on July 28, 2004, the Converter hired PDC to act as the licensed real estate broker on the conversion project.  Specifically, one of PDC's employees, Defendant Jim Cerrone, held the real estate license that PDC used to engage in real estate sales.  PDC acted as the real estate broker until November 22, 2004, when the Converter obtained a Nevada broker's license and terminated its relationship with PDC.  At this point, PDC had received commission from the sales of two condominium units: one to Arlene Marentic and one to Everett Croxson.  To complete the purchase, each buyer was required to execute the "Joint Purchase Agreement and Escrow Instructions."  This document included Addendum D, which identified numerous defects in the property.

Thereafter, Plaintiffs filed a complaint alleging five claims for relief against PDC and Jim Cerrone: (1) Negligence; (2) Negligent Hiring, Retention & Supervision; (3) Negligent Misrepresentation; (4) Breach of Contract; and (5) Breach of Implied Warranties.  Plaintiffs' Complaint alleges two additional claims for relief against PDC that are not asserted against Jim Cerrone: (1) Fraud; and (2) Consumer Fraud & Deceptive Trade Practices.[2]

---

[2] In addition to the instant litigation, Plaintiff Copper Sands Homeowners Association, Inc. had previously filed an action that was adjudicated in state court related to the defects in the original construction of the Copper Sands property.  Defendants argue that, as a result of the state court's judgment in this prior litigation, Plaintiffs' claims are barred by principles of claim and issue preclusion.  However, in contrast to the previous litigation, the instant litigation relates to Defendants' alleged wrongdoing during the conversion of the property from apartment units to condominium units, rather than wrongdoing during the original construction.  For this reason, the Court finds that Defendants have failed to carry their burden of establishing that these claims/issues are barred by the previous litigation. *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 718 (Nev. 2009) (citing *Bennett v. Fidelity & Deposit Co.*, 652 P.2d 1178, 1180 (Nev. 1982)) ("The party seeking to assert a judgment against another has the burden of proving the preclusive effect of the judgment.").

## II.  <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

"The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968).  In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v.  Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to

negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative,

1  summary judgment may be granted. *See id.* at 249–50.

2  **III.   DISCUSSION**

3       **A.   Negligence**

4       "It is well established that to prevail on a negligence claim, a plaintiff must establish four

5  elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and

6  (4) damages." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009)

7  (citing *Turner v. Mandalay Sports Entm't*, 180 P.3d 1172, 1175 (Nev. 2008)).  Defendants first argue

8  that neither PDC nor Cerrone owed a duty to Plaintiffs.  However, even if either of the Defendants owed

9  a duty to Plaintiffs, Defendants also argue that summary adjudication is appropriate because Plaintiffs

10  have failed to provide any evidence that Defendants breached such a duty.

11            *1.   Nevada Revised Statute § 645.252*

12       Plaintiffs' Complaint asserts that Defendants "owed Plaintiffs a duty to exercise reasonable care

13  in marketing the Subject Property." (Third Am. Compl. ¶ 88, ECF No. 154.) Whether Defendants owed

14  Plaintiffs a duty of care is a question of law and, as such, must be decided by the Court regardless of

15  potential factual controversies. *See Sanchez*, 221 P.3d at 1280 (Nev. 2009) (citation omitted).

16       In the context of real estate transactions, § 645.252 of the Nevada Revised Statutes expressly

17  imposes certain duties on parties that act as an agent in a real estate transaction. Nev. Rev. Stat.

18  § 645.252.  Among other duties, subsection one of 645.252 imposes duties to disclose certain

19  information. Nev. Rev. Stat. § 645.252(1). In addition, subsection two of 645.252 imposes a duty to

20  "exercise reasonable skill and care with respect to all parties to the real estate transaction." Nev. Rev.

21  Stat. § 645.252(2).

22       Here, neither party disputes that Defendants acted as an agent in the sale of the units to Plaintiffs

23  Arlene Marentic and Everett Croxson.  In contrast, Defendants were not an agent in the real estate

24  transaction between the Converter and the remaining named Plaintiffs.  Accordingly, as to Plaintiffs

25  Marentic and Croxson, § 645.252 required that Defendants disclose the required information and that

Defendants act with reasonable skill and care during the transactions.  However, as to the remaining named Plaintiffs, § 645.252 cannot serve as the basis for imposing a duty of care on Defendants. Nevertheless, § 645.252 clearly imposes certain limited duties.

Even to the extent that Defendants owed a duty of care, the statute expressly omits a duty to independently verify an inspection or a duty to conduct a separate investigation of the condition of the subject property.  Specifically, § 645.252(4) expressly states that an agent in a real estate transaction owes no duty to:

> (a)  Independently verify the accuracy of a statement made by an inspector certified pursuant to chapter 645D of NRS or another appropriate licensed or certified expert.
> (b)  Conduct an independent inspection of the financial condition of a party to the real estate transaction.
>
> (c)  Conduct an investigation of the condition of the property which is the subject of the real estate transaction.

Nev. Rev. Stat. 645.252(4).

In this case, Defendants relied on a third-party expert to inspect the units and create "Addendum D," a document that detailed the defects that the inspector found.  Accordingly, Defendants argue that pursuant to § 645.252(4), they owed Plaintiffs no duty to independently verify the contents of Addendum D.

In response, Plaintiffs first argue that "[t]his rule does not apply if the broker has reason to question the accuracy or completeness of the information." (Resp. 10:17-27, ECF NO. 373-1.) This argument is problematic for two reasons: first, Plaintiffs support this proposition by citing only to case law from California, Vermont, Colorado, and Washington, all of which is not binding on this Court and second, even if the Court found these cases persuasive, they fail to actually support Plaintiffs' argument. In fact, each of these cases simply states that the absence of a duty to independently verify cannot relieve agents, such as Defendants, from their duty to disclose accurate information known to the agents at the time of the transaction. *See, e.g.*, *Bloor v. Fritz*, 180 P.3d 805, 815 (Wash. 2008) (imposing

liability on listing agent who possessed actual knowledge of past illegal drug activities on the property and failed to disclose such information to the buyers even though the listing agent had no duty to verify the accuracy and completeness of the seller's statements on the matter).  At bottom, Plaintiffs appear to argue that Defendants' allegedly breached the duty of disclosure, thus, creating a duty to independently investigate the defects stated in Addendum D.[3]  However, this argument is neither supported by Nevada case law nor the case law on which Plaintiffs rely.

Similarly, Plaintiffs argue that Defendants' "unique role" as the developer who actually oversaw the original construction should impute additional duties on Defendants during the sale of the units to Plaintiffs.  Plaintiffs specifically argue that the Court should impose this duty because "when [Defendants] returned to the property in their subsequent role as brokers, they came equipped with special insights unavailable to normal brokers: they knew where all the skeletons were buried, so to speak." (Resp. 11:5-7, ECF No. 373-1.)  However, Plaintiffs' interpretation of § 645.252 is contrary to the language of the statute, which specifically states that Defendants had no duty to "[i]ndependently verify the accuracy of a statement made by an inspector" or to "[c]onduct an investigation of the property." Nev. Rev. Stat. § 645.252(4)(a), (c).  Plaintiffs have failed to provide, and the Court has been unable to locate, any legal authority to support their interpretation of § 645.252.

For the reasons discussed above, the Court finds that § 645.252 does impose certain duties on Defendants.  However, this section expressly excludes any duty to independently verify statements made by a certified inspector, unless Defendants had reason to suspect the accuracy of those statements.  Because Plaintiffs have failed to provide sufficient facts demonstrating that Defendants had reason to question the veracity of the inspector's statements, Plaintiffs have failed to establish that a genuine issue of material fact exists.  Accordingly, the Court finds that Plaintiffs' arguments based on the duties imposed by § 645.252 do not defeat Defendants' Motion for Summary Judgment.

---

[3] Plaintiffs also appear to argue that § 645.252(4) does not provide a "defense" to this negligence action. (Resp. 11:8-10, ECF No. 373-2.)  The Court agrees that § 645.252(4) is not a defense.  This section simply limits the duties owed by an agent in a real estate transaction to the parties to that transaction.

### 2. *Plaintiffs' Remaining Allegations of Statutory Violations*

Plaintiffs' Third Amended Complaint also alleges that Defendants' statutory violations constitute negligence per se, thus establishing the duty and breach elements of Plaintiffs' negligence cause of action. (*See, e.g.*, Compl. ¶ 89, ECF No. 154.)  Defendants fail to even mention negligence per se in their Motion for Summary Judgment.  Furthermore, in Plaintiffs' Response they assert that Defendants violated various provisions of Chapters 119 and 598 of the Nevada Revised Statutes. (Resp. 11:11-12:12, ECF No. 373.)  In response, Defendants argue that "Plaintiffs' reliance on these chapters is misguided because none of these Chapters confer upon Plaintiffs a private right of action." (Reply 15:15-16, ECF No. 410.)  However, what Defendants fail to realize is that Plaintiffs are not attempting to assert a private cause of action under these regulations, but, instead, are attempting to use these regulations to establish the duty and breach of their negligence claim under the doctrine of negligence per se. *See, e.g.*, *Ashwood v. Clark Cnty.*, 930 P.2d 740, 744 (Nev. 1997).

"A statutory violation is negligence per se if the injured party belongs to the class of persons whom the statute was intended to protect, and the injury suffered is of the type the statute was intended to prevent." *Atkinson v. MGM Grand Hotel, Inc.*, 98 P.3d 678, 680 (Nev. 2004).  Furthermore, "[w]hether a legislative enactment provides a standard of conduct in the particular situation presented by the plaintiff is a question of statutory interpretation and construction for the court." *Sagebrush Ltd. v. Carson City*, 660 P.2d 1013, 1015 (1983) (citing *Sobrio v. Cafferata*, 297 P.2d 828, 830 (Nev. 1956)).

Because Defendants failed to address Plaintiffs' negligence per se argument, the Court cannot find that Defendants have carried their burden.  Thus, Defendants have neither (1) presented evidence that negates an essential element of Plaintiffs' case; nor (2) demonstrated that Plaintiffs failed to make a showing sufficient to establish an element essential to their negligence cause of action. *See Celotex Corp.*, 477 U.S. at 323–24.  Because Defendants have failed to meet this initial burden, the Court must DENY Defendants' Motion for Summary Judgment on Plaintiffs' First Claim for Relief for Negligence.

## B.   Negligent Hiring

"The tort of negligent hiring imposes a general duty on the employer to conduct a reasonable background check on a potential employee to ensure that the employee is fit for the position." *Burnett v. C.B.A. Sec. Service, Inc.*, 820 P.2d 750, 752 (Nev. 1991).  "An employer breaches this duty when it hires an employee even though the employer knew, or should have known, of that employee's dangerous propensities." *Hall v. SSF, Inc.*, 930 P.2d 94, 98 (Nev. 1996).  Finally, "[i]t is a basic tenet that for an employer to be liable for negligent hiring, training, or supervision of an employee, the person involved must actually be an employee."

*Rockwell v. Sun Harbor Budge Suites*, 925 P.2d 1175, 1181 (Nev. 1996) (citations omitted).

Because Plaintiffs bear the burden in negligence cases, *Perez v. Las Vegas Med. Ctr.*, 805 P.2d 589, 590-591 (Nev. 1991), Defendants can defeat this claim either by presenting evidence to negate an essential element of the nonmoving party's case or by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323-24.  Here, Plaintiff asserts that Defendants negligently hired Linda Hoang ("Hoang") as a real estate agent and that, while acting as a real estate agent, Hoang acted negligently in failing to treat both parties to the real estate transaction fairly.  However, even if Hoang's behavior amounted to negligence, Plaintiffs' assertions are insufficient.  Plaintiffs fail to provide evidence of Defendants' hiring practices.  Additionally, Plaintiffs have set forth no evidence indicating that Defendants failed to conduct a background search on Hoang that would have revealed an alleged propensity.  Finally, Plaintiffs lack sufficient evidence to create a genuine issue of material fact as to whether Defendants knew or should have known that Hoang would act in this allegedly negligent manner.  For these reasons, Defendants have successfully carried its burden.

Because Defendants have carried their burden, the burden then shifts to Plaintiffs to establish that a genuine issue of material fact exists as to the elements of Plaintiffs' negligent hiring claim. *See*

*Matsushita Elec. Indus.*, 475 U.S. at 586.  For example, in *Rockwell v. Sun Harbor Budget Suites*, the Nevada Supreme Court held that the plaintiff had established the existence of a genuine issue of material fact as to a negligent hiring claim when plaintiff produced evidence that the employee had been fired from jobs in the past due to his violent behavior and that the employee had lied on his application. 925 P.2d 1175, 1181 (Nev. 1996).  However, in this case, Plaintiffs' Response to Defendants' Motion for Summary Judgment fails to provide the Court with the requisite evidence.  In fact, Plaintiffs' Response fails to even mention the Negligent Hiring cause of action.  For all of these reasons, Plaintiffs have failed to carry their burden of establishing a genuine issue of material fact as to the elements of negligent hiring.  Accordingly, the Court GRANTS summary judgment in favor of Defendants on Plaintiffs' Third Claim for Relief for Negligent Hiring, Retention & Supervision.

### C.    Negligent Misrepresentation

The Nevada Supreme Court has adopted the definition of the tort of negligent misrepresentation as stated in § 552 of the Restatement (Second) of Torts:

> (1) One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998) (citing *Bill Stremmel Motors, Inc. v. First Nat'l Bank of Nev.*, 575 P.2d 938, 940 (Nev. 1978)).  Thus, to prevail on their negligent misrepresentation claim, Plaintiffs bear the burden of proving that (1) Defendants made a false representation; (2) the representation was made in the course of Defendants' business, profession or employment, or in any other action in which they had a pecuniary interest; (3) the representation was made for the guidance of others in their business transactions; (4) Plaintiffs justifiably relied on the representation; (5) Plaintiffs' reliance resulted in pecuniary loss to Plaintiffs; and (6) Defendants failed to exercise reasonable care or competence in obtaining or communicating the information. *See*

*Barmettler*, 956 P.2d at 1387; Restatement (Second) of Torts § 552.

In this case, Plaintiffs have failed to make a showing sufficient to establish an element essential to Plaintiffs' negligent misrepresentation cause of action.[4] (Mot. for Summ. J. 17:20-21, ECF No. 307 ("[T]here is simply no evidence to support the claims.").)  Specifically, Defendants contend that "the testimony from the homeowners themselves is sufficient to demonstrate that no misrepresentations were made." (Mot. for Summ. J. 17:20-21 (citing (Croxson Dep. 67:20-23, 68:22-24, 69:12-19, ECF No. 307-6; Marentic Dep. 89:19-25; 95:15-23; 118:17-120:3, ECF No. 307-6).)  The deposition testimony of both Plaintiffs Croxson and Marentic unequivocally demonstrate that these Plaintiffs have no recollection of conversations held with Defendants or any of their agents.  Therefore, Defendants have carried their initial burden.  In response, Plaintiffs attempt to show the existence of a genuine issue of material fact by asserting that Lynda Hoang ("Hoang"), an agent employed by PDC during the short time that PDC was the broker for the Converter, "informed purchasers that 'if' there were defects existed [sic] in the units there was insurance in place to pay for the repairs." (Resp. 17:25-18:1, ECF No. 373-3 (citing Hoang Dep. 54:2-14, ECF No. 380-5).)  Plaintiffs further argue that Hoang's statement contradicted the language of the insurance policy. (Resp. Ex. 17, ECF No. 380-5 (section four expressly states that the insurance plan "does not cover repairs . . . required as a result of . . . cosmetic defects, design flaws, manufacturer defects, structural defects . . . .").)  Even to the extent this constitutes a false representation, this alone is insufficient to show the existence of a genuine issue of material fact.  Specifically, Plaintiffs have failed to even make an assertion that they relied on these statements.  Indeed, the deposition testimony given by Plaintiffs Croxson and Marentic stating that they do not recall

---

[4] In Defendants' Motion for Summary Judgment, Defendants also argue that the presence of an integration clause in the purchase agreements that Plaintiffs executed negates the element of justifiable reliance.  Specifically, Defendants argue that "Plaintiffs cannot justifiably rely on any representations of sales agents when the express language of the written agreement executed by Plaintiffs states that there were no representations other than those contained within the various sales documents." (Mot. for Summ. J. 20:16-21:7, ECF No. 307.)  However, Plaintiffs correctly note in their Response, and Defendants do not refute in their Reply, that the Nevada Supreme Court has expressly recognized that "integration clauses do not bar claims for misrepresentation." *Blanchard v. Blanchard*, 839 P.2d 1320, 1322-1323 (Nev. 1992) (citing *Epperson v. Roloff*, 719 P.2d 799, 802 (Nev. 1986)).

1   any specific statements made by Hoang would seem to negate this element.

2           Next, even if Plaintiffs did recall these statements and did rely on them, Plaintiffs have failed to

3   establish that such reliance was justifiable.  Finally, Plaintiffs provide no factual support from which the

4   Court can find a genuine issue of material fact as to whether Defendants failed to exercise reasonable

5   care or competence in obtaining or communicating the information.  Accordingly, Plaintiffs have not

6   carried their burden of establishing that a genuine issue for trial remains as to Plaintiffs' negligent

7   misrepresentation claim.  For these reasons, the Court GRANTS summary judgment in favor of

8   Defendants on Plaintiffs' Fourth Claim for Relief for Negligent Misrepresentation.

9           **D.     Breach of Contract**

10          To prevail on their breach of contract claim, Plaintiffs bear the burden of proving that a valid

11  contract exists, that Defendants breached that contract, and that Defendants' breach caused damage to

12  Plaintiffs. *See Richardson v. Jones*, 1 Nev. 405, 408 (1865).  Because Plaintiffs carry the burden of

13  proving these elements, Defendants contend that summary judgment in Defendants' favor is appropriate

14  because Plaintiffs have failed to make a showing sufficient to establish the existence of a valid contract.

15  Specifically, in Interrogatory No. 10, Defendants requested that Plaintiffs identify the agreement on

16  which they are relying for their breach of contract claim. (*See, e.g.*, Pl. Marentic's Resp. to Defs.'

17  Interrog. No. 10, Mot. for Summ. J. Ex. 9 5:6-13, ECF No. 307-5.)  Plaintiffs responded with a boiler

18  plate answer that objected to the question as calling for a legal and/or expert opinion and stating that

19  Plaintiffs were unable to identify such an agreement because they are homeowners and, as such, do not

20  understand the "legal statements and expert analysis" contained within Plaintiffs' complaint. (*Id.*)  Based

21  on Defendants' assertions and Plaintiffs' responses to Defendants' Interrogatory No. 10, the Court finds

22  that Defendants' have carried their initial burden of establishing that summary judgment is proper.

23  Thus, the burden shifts to Plaintiffs to establish that a genuine issue of material fact exists as to the

24  elements of Plaintiffs' negligent hiring claim. *See Matsushita Elec. Indus.*, 475 U.S. at 586.

25          However, Plaintiffs' Response to Defendants' Motion for Summary Judgment fails to provide

the Court with the requisite evidence.  In fact, Plaintiffs' Response fails to even mention the Breach of Contract cause of action or any agreement on which that cause of action is based.  For these reasons, Plaintiffs have failed to carry their burden of establishing a genuine issue of material fact as to the existence of a valid contract.  Accordingly, the Court GRANTS summary judgment in favor of Defendants on Plaintiffs' Fifth Claim for Relief for Breach of Contract.

### E.   Breach of Implied Warranties

Defendants also seek summary judgment on Plaintiffs' Seventh Claim for Relief for Breach of Implied Warranties.  Plaintiffs' Complaint asserts that Defendants "undertook to provide services to, or on behalf of, Plaintiffs"; that Defendants "impliedly warranted to perform their services with reasonable care and skill"; and that Defendants "breached their implied warranties by failing to use reasonable care and skill in discovering and disclosing defects in the Subject Property." (Third Am. Compl. ¶¶ 158-160, ECF No. 154.)

Section 116.4114 the Uniform Common-Interest Ownership Act, Nev. Rev. Stat. 116.001-116.4120, provides that,

> [a] declarant and any dealer impliedly warrant that a unit and the common elements in the common-interest community are suitable for the ordinary uses of real estate of its type and that any improvements made or contracted for by a declarant or dealer, or made by any person before the creation of the common-interest community, will be:
>
> (a) Free from defective materials; and
> (b) Constructed in accordance with applicable law, according to sound standards of engineering and construction, and in a workmanlike manner.

Nev. Rev. Stat. § 116.4114(2).  Thus, to prevail on their Breach of Implied Warranties cause of action, Plaintiffs must first establish that Defendants were either a "declarant" or a "dealer" at the time.  For the reasons discussed below, the Court finds that Defendants have carried their burden of demonstrating that Plaintiffs have failed to make a showing sufficient to establish that Defendants were either declarants or dealers, or that Defendants succeeded to a special declarant's right.  Furthermore, for the reasons

1    discussed below, Plaintiffs have failed to establish the existence of a genuine issue of material fact.

2    Accordingly, the Court finds that summary judgment is proper on Plaintiffs' Breach of Implied

3    Warranties cause of action.

4              *1.      Defendants were not declarants*

5              Section 116.035 defines "declarant" as "any person or group of persons acting in concert who:

6    (1) As part of a common promotional plan, offers to dispose of interest of the person or group of persons

7    in a unit not previously disposed of; or (2) Reserves or succeeds to any special declarant's right." Nev.

8    Rev. Stat. 116.035.

9              Defendants first assert that Defendants are not properly categorized as "declarants" under this

10   section.[5]  Specifically, this definition requires that the "declarant" dispose of the declarant's own interest

11   in the property disposed. Nev. Rev. Stat. § 116.035(1).   To that end, Defendants allege that "the

12   undisputed facts are that [Defendants] never held any ownership interest in the Copper Sands project."

13   (Reply 22:17-19, ECF No. 410.)  Therefore, Defendants conclude that "[b]ecause [Defendants] never

14   owned any interest in the project, [Defendants] are incapable of being a 'declarant' for purposes of NRS

15   Chapter 116." (*Id.* at 22:19-23:1.)  Similarly, Defendants have carried their burden of establishing that

16   they also do not "succeed[] to any special declarant's right" because Plaintiffs have failed to

17   demonstrate that Defendants succeeded to any rights of the Converter. (Reply 23:9-15, ECF No. 410

18   (citing Nev. Rev. Stat. 116.035(2)).)   Accordingly, Defendants have successfully shifted the burden to

19   Plaintiff to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio*

20   *Corp.*, 475 U.S. 574, 586 (1986).

21             In response, Plaintiffs appear to argue that some alleged concerted action between the

22   Defendants and the Converter alter the application of § 116.035. (Resp. 18:22-24, ECF No. 373-3

23

24   [5] Defendants also contend that summary judgment on this claim is appropriate because, in December 2011, the
     state court already determined that Defendant PDC was not a "declarant" and, thus, not liable for breach of
25   implied warranties under Chapter 116 of the Nevada Revised Statutes. (Mot. for Summ. J., Ex. 10 17:22-25, ECF
     No. 307-5.)  As discussed in this section, even in the absence of the prior state court judgment, neither of these
     Defendants fit within the definition of "declarant" as provided by § 116.035 of the Nevada Revised Statutes.

("Likewise, under NRS 116.035 any group of persons acting toward a common promotional plan are liable for NRS Chapter 116 warranties even if not specifically defined as a dealer or declarant.")). However, Plaintiffs have cited no legal authority in support of this interpretation of the statute and the Court, on its independent inquiry, is likewise unable to find such authority.

### 2. Defendants were not dealers

Section 116.033 defines "dealer" as "a person in the business of selling units for his or her own account." Nev. Rev. Stat. § 116.033.  Defendants contend that, in order to "sell[] units for his or her own account," the "dealer" must have "an ownership interest that you are selling." (Reply 23:4-6, ECF No. 410.)  Plaintiffs have failed to bring forward any evidence or legal authority to the contrary. Furthermore, upon reviewing the Third Amended Complaint and Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, the Court is unable to locate any reference to § 116.033.  Finally, even to the extent that Plaintiffs mention that the implied warranties of Chapter 116 apply to dealers, Plaintiffs appear to concede that Defendants are not, in fact, dealers.  Specifically, Plaintiffs' attempts to avoid summary judgment appear grounded in some sort of "concerted action" theory that would impose liability on a party "even if not specifically defined as a dealer or declarant." (Resp. 18:22-23, ECF No. 373-3.)  Thus, the Court concludes that Plaintiffs have failed to establish that a genuine issue of material fact exists as to whether Defendants fit within the definition of "dealer" as provided by § 116.033.

### 3. Defendants did not succeed to a special declarant's right

As noted above, under § 116.035 of the Nevada Revised Statutes, a party can also be held liable for the Chapter 116 implied warranties if that party "succeed[ed] to any special declarant's right." Section 116.089 defines "special declarant's rights" as

> [The] rights reserved for the benefit of a declarant to:
>
> 1.  Complete improvements indicated on plats or in the declaration or, in a cooperative, to complete improvements described in the public offering statement pursuant to paragraph (b) of subsection 1 of NRS 116.4103;
> 2.  Exercise any developmental right;
> 3.  Maintain sales offices, management offices, signs advertising the common-interest community and models;

4.   Use easements through the common elements for the purpose of making improvements within the common-interest community or within real estate which may be added to the common-interest community;

5.   Make the common-interest community subject to a master association;

6.   Merge or consolidate a common-interest community with another common-interest community of the same form of ownership; or

7.   Appoint or remove any officer of the association or any master association or any member of an executive board during any period of declarant's control.

In this case, Defendants correctly note that "Plaintiffs have failed to come forward with any evidence whatsoever to suggest that [either Defendant] succeeded to any rights of the Converter." (Reply 23:11-13, ECF No. 410.)  Furthermore, the Court finds no evidence to suggest that the converter did not sell all of the units that make up the Subject Property.  Finally, as with the "dealer" designation discussed above, Plaintiffs have failed to even make a conclusory allegation that Defendants succeeded to any of the rights mentioned in § 116.089.  Accordingly, Plaintiffs have failed to carry their burden of establishing the existence of a genuine issue of material fact as to whether Defendants succeeded to a special declarant's right.

### 4.   Defendants were not affiliates of the converter

Although the Court finds that Plaintiffs' "concerted action" theory of liability lacks legal authority, Plaintiffs' statements in their Response Brief could also be interpreted as arguing that Defendants were actually affiliates of the Converter pursuant to § 116.007 of the Nevada Revised Statutes.  Section 116.007 defines an "affiliate of a declarant" as "any person who controls, is controlled by or is under common control with a declarant." Nev. Rev. Stat. § 116.007.  Section 116.007 further provides that

1.   A person controls a declarant if the person:

(a) Is a general partner, officer, director or employer of the declarant;
(b) Directly or indirectly or acting in concert with one or more other persons, or through one or more subsidiaries, owns, controls, holds with power to vote or holds proxies representing, more than 20 percent of the voting interest in the declarant;
(c) Controls in any manner the election of a majority of the directors of the declarant; or
(d) Has contributed more than 20 percent of the capital of the declarant.

2. A person is controlled by a declarant if the declarant:

   (a) Is a general partner, officer, director or employer of the person;
   (b) Directly or indirectly or acting in concert with one or more other persons, or through one or more subsidiaries, owns, controls, holds with power to vote or holds proxies representing, more than 20 percent of the voting interest in the person;
   (c) Controls in any manner the election of a majority of the directors of the person; or
   (d) Has contributed more than 20 percent of the capital of the person.

In this case, Defendants have carried their burden of establishing that Plaintiffs have failed to come forward with evidence that Defendants either controlled or were controlled by the declarant, Copper Sands Realty.  Defendants were hired by Copper Sands Realty.  Furthermore, Plaintiffs have failed to provide any evidence to support a finding that Defendants had any sort of ownership interest in Copper Sands Realty.  Therefore, Defendants did not control the declarant.

Plaintiffs have also failed to provide evidence that Defendants were controlled by Copper Sands Realty as defined in § 116.007(3).  Because there is no evidence of Copper Sands Realty possessing an ownership interest in PDC, Plaintiffs sole remaining method by which Plaintiffs could establish that Defendants were controlled by Copper Sands Realty is to establish that Copper Sands Realty was an "employer of [Defendants]." Nev. Rev. Stat. § 116.007(3)(a).  However, Copper Sands Realty specifically hired Defendants as an independent contractor, rather than an employee. (Mot. for Summ. J., Ex. 4 "Sales and Marketing Agreement" at 4, ECF No. 307-1.)  Furthermore, Plaintiffs have failed to provide any evidence contradicting that the declarant hired Defendants as independent contractors, rather than employees.  Accordingly, for all the reasons discussed above, the Court GRANTS summary judgment in favor of Defendants on Plaintiffs' Seventh Claim for Relief for Breach of Implied Warranties.

### F.    Fraud

In Plaintiffs' Response to Defendants' Motion for Summary Judgment, Plaintiffs characterize their fraud cause of action as "Fraud Based Misrepresentation." (Resp. 15:18-21, ECF No. 373-2.)  To

prevail on a claim of fraudulent misrepresentation, Plaintiffs bear the burden of proving that

(1) Defendants made a false representation; (2) Defendants knew or believed that the representation was

false or that they lacked sufficient basis from which to make the representation; (3) Defendants intended

to induce Plaintiffs to act in reliance on the misrepresentation; (4) Plaintiffs justifiably relied on the

Defendants' representation; and (5) Plaintiffs suffered damage as a result of this reliance. *Lubbe v.*

*Barba*, 540 P.2d 115, 117 (Nev. 1975). "The suppression of a material fact which a party is bound in

good faith to disclose is equivalent to a false representation [because] it constitutes an indirect

representation that such fact does not exist." *Villalon v. Bowen*, 273 P.2d 409, 414 (Nev. 1954).

Defendants first argue that Plaintiffs' fraudulent misrepresentation claim is barred by the

principles of issue preclusion. Although the Court is not persuaded that Defendants have carried its

burden of establishing each of the factors of issue preclusion, the Court does find that Defendants have

carried their initial burden by demonstrating that the Plaintiffs have failed to make a showing sufficient

to establish an element essential to Plaintiffs' fraudulent misrepresentation claim. In fact, Defendants

have established that Plaintiffs have failed to establish any of the five elements of fraudulent

misrepresentation[6].

Plaintiffs again attempt to show the existence of a genuine issue of material fact by relying on

Hoang's deposition testimony. Specifically, Plaintiffs contend that Hoang stated that she "informed

purchasers that 'if' there were defects existed [sic] in the units there was insurance in place to pay for

the repairs." (Resp. 17:25-18:1, ECF No. 373-3 (citing Hoang Dep. 54:2-14, ECF No. 380-5).)

Plaintiffs further argue that Hoang's statement contradicted the language of the insurance policy. (Resp.

Ex. 17, ECF No. 380-5 (section four expressly states that the insurance plan "does not cover repairs . . .

required as a result of . . . cosmetic defects, design flaws, manufacturer defects, structural defects . . ..").)

Even to the extent this constitutes a false representation, this alone is insufficient to show the

---

[6] Defendants cite to the deposition testimony of Plaintiff Croxson and Plaintiff Marentic, which demonstrate these
Plaintiffs' inability to recall any specific statements made by the sales agent. (Croxson Dep. 67:20-23, ECF No.
307-6; Marentic Dep. 89:19-25; 95:15-23; 118:17-120:3, ECF No. 307-6.)

existence of a genuine issue of material fact.  Plaintiffs have failed to provide any evidence that Defendants knew the representation was false; that Defendants intended for Plaintiffs to rely on the representation; that Plaintiffs justifiably relied on the representation; or that this justifiable reliance was the proximate cause of any damage that Plaintiffs suffered.  Not only have Plaintiffs failed to provide "specific facts by producing competent evidence," Plaintiffs also failed to even mention these elements in its Response to Defendants' Motion for Summary Judgment.  Accordingly, Plaintiffs have not carried their burden of establishing that a genuine issue for trial remains as to Plaintiffs' fraudulent misrepresentation claim.  For these reasons, the Court GRANTS summary judgment in favor of Defendants on Plaintiffs' Sixteenth Claim for Relief for Fraud.

### G.   Consumer Fraud & Deceptive Trade Practices

Defendant PDC[7] also seeks summary judgment on Plaintiffs' Seventeenth Claim for Relief for Consumer Fraud & Deceptive Trade Practices.  Plaintiffs' Complaint asserts that PDC knowingly made certain false representations in violation of § 598.0915(15) of Nevada's Deceptive Trade Practices Act.  *See* Nev. Rev. Stat. § 598.0915 ("A person engages in a 'deceptive trade practice' if, in the course of his or her business or occupation, he or she: . . . (15) Knowingly makes any other false representation in a transaction.").  Plaintiffs' Complaint concludes that Defendants are liable for consumer fraud under § 41.600 of the Nevada Revised Statutes. Nev. Rev. Stat. § 41.600 (providing that "[a]n action may be brought by any person who is a victim of consumer fraud" and defining "consumer fraud" as, among other things, "[a] deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive").

The Nevada Revised Statutes define "deceptive trade practices" in § 598.0915 through § 598.0925.  However, these sections do not actually provide a private right of action.  Rather, Plaintiffs' allegation that they were victims of deceptive trade practices must rely on § 41.600, which provides that "[a]n action may be brought by any person who is a victim of consumer fraud." Nev. Rev. Stat.

---

[7] Plaintiffs do not list Defendant Cerrone among the list of defendants against whom Plaintiffs are asserting this claim.

1    § 41.600(1).  Section 41.600 defines "consumer fraud," among other things, as "[a] deceptive trade

2    practice as defined in NRS § 598.0915 to § 598.0925, inclusive." Nev. Rev. Stat. § 41.600(2)(e).

3          Although the Nevada Supreme Court has not expressly stated the elements of a Consumer Fraud

4    Claim brought under § 41.600 of the Nevada Revised Statutes, the Court is persuaded by *Picus v. Wal-*

5    *Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009).  Specifically, the Court determines that for a

6    consumer fraud claim, "the Nevada Supreme Court would require, at a minimum, a victim of consumer

7    fraud to prove that (1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff.

8    *Id.*  The Court is further persuaded that, because Plaintiffs are basing their consumer fraud claim on an

9    alleged false representation, Plaintiffs can prove the causation element only by demonstrating their

10   reliance on the alleged false representations. *Id.* (citing *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 665

11   (9th Cir. 2004)) ("Because Defendants here allegedly made an affirmative misrepresentation and

12   Plaintiff could prove she sustained damages as a result of Defendants' alleged misrepresentation only by

13   demonstrating she relied upon [the misrepresentation], the Court concludes causation includes reliance

14   in this case").

15         Here, PDC demonstrates that Plaintiffs have failed to make a showing sufficient to establish an

16   element essential to Plaintiffs' Deceptive Trade Practices/Consumer Fraud claim.  First, PDC notes that

17   "Plaintiffs' Opposition fails to specifically address the Fraud/Deceptive Practice claim." (Reply 24:27,

18   ECF No. 410.)  Thus, PDC argues, summary judgment is proper because Plaintiffs have failed to

19   provide sufficient evidence to create a genuine issue of material fact on this claim.  Second, PDC asserts

20   that Plaintiffs have failed to identify which allegedly false representations serve as the basis for this

21   claim.  Specifically, PDC relies on the deposition testimony of Plaintiffs Croxson and Marentic in which

22   these Plaintiffs were unable to articulate any such representations.  Thus, PDC has carried its burden and

23   shifted the burden to Plaintiffs to establish the existence of a genuine issue of material fact.

24         In response, Plaintiffs assert that their Deceptive Trade Practices claim is based on § 598.0923 of

25   the Nevada Revised Statutes, which states that "[a] person engages in a 'deceptive trade practice' when

1   in the course of his or her business or occupation he or she knowingly . . . [c]onducts the business or

2   occupation without all required state, county or city licenses." Nev. Rev. Stat. § 598.0923(1).

3   Specifically, Plaintiffs contend that PDC sold these units without first acquiring the broker's license in

4   violation of § 645.283 of the Nevada Revised Statutes.  However, Plaintiffs misconstrue § 645.283; this

5   section applies to "owner-developers" and Plaintiffs expressly admit that PDC was not an "owner-

6   developer" at the times relevant to this action. *See* Nev. Rev. Stat. 645.283(1) ("an owner-developer who

7   is registered with the Real Estate Division may employ one or more licensed real estate salespersons to

8   sell any single-family residence, owned by the owner-developer and not previously sold, which is within

9   the area covered by his or her current registration.")  Because this section is inapplicable to PDC,

10   Plaintiffs cannot rely on it to survive the motion for summary judgment.

11          After carefully examining the evidence, the Court does find that a genuine issue of material fact

12   may exist as to the "act of consumer fraud" element of Plaintiffs' consumer fraud cause of action.

13   Specifically, as discussed above in Section III.F, Plaintiffs assert that Hoang "informed purchasers that

14   'if' there were defects existed [sic] in the units there was insurance in place to pay for the repairs" (Resp.

15   17:25-18:1, ECF No. 373-3 (citing Hoang Dep. 54:2-14, ECF No. 380-5)) and that this statement

16   contradicted the language of the insurance policy (Resp. Ex. 17, ECF No. 380-5 (section four expressly

17   states that the insurance plan "does not cover repairs . . . required as a result of . . . cosmetic defects,

18   design flaws, manufacturer defects, structural defects . . ..")).

19          However, as above, even to the extent Hoang's statement constitutes a false representation, this

20   alone is insufficient to show the existence of a genuine issue of material fact on Plaintiffs' consumer

21   fraud claim because Plaintiffs have failed to provide any evidence that Plaintiffs relied on the

22   representation and proximately caused Plaintiffs to suffer damages.  Once again, Plaintiffs have not only

23   failed to provide "specific facts by producing competent evidence," *see Celotex*, 477 U.S. at 324,

24   Plaintiffs have failed to even mention these elements in its Response to Defendants' Motion for

25   Summary Judgment.  Accordingly, Plaintiffs have not carried their burden of establishing that a genuine

issue for trial remains as to Plaintiffs' consumer fraud/deceptive trade practices claim.  For these

reasons, the Court GRANTS summary judgment in favor of Defendants on Plaintiffs' Seventeenth

Claim for Relief for Consumer Fraud & Deceptive Trade Practices.

## IV.   <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by Defendants

Plaster Development Company and Jim Cerrone (ECF No. 307) is **GRANTED-IN-PART** and

**DENIED-IN-PART.**  The Court **DENIES** the Motion for Summary Judgment as to Plaintiffs' First

Claim for Relief for Negligence.  The Court **GRANTS** the Motion for Summary Judgment as to

**Plaintiffs' Third Claim** for Relief for Negligent Hiring, Retention & Supervision; **Plaintiffs' Fourth**

**Claim** for Relief for Negligent Misrepresentation; **Plaintiffs' Fifth Claim** for Relief for Breach of

Contract; **Plaintiffs' Seventh Claim** for Relief for Breach of Implied Warranties; **Plaintiffs' Sixteenth**

**Claim** for Relief for Fraud; and **Plaintiffs' Seventeenth Claim** for Relief for Consumer Fraud &

Deceptive Trade Practices.

DATED this 26th day of June, 2013.

_____

Gloria M. Navarro

United States District Judge