UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| COPPERSANDS HOMEOWNERS ASSOCIATION, INC., *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> COPPER SANDS REALTY, LLC, *et al.*, <br><br> Defendants. | Case No.: 2:10-cv-00510-GMN-NJK <br><br> **ORDER** |

Pending before the Court is the Motion for Summary Judgment (ECF No. 679) filed by Defendant DFT, Inc. dba The Cannon Management Company ("Cannon"). Plaintiff Copper Sands Homeowners Association, Inc. ("the HOA") filed a Response (ECF No. 698), and Defendants filed a Reply (ECF No. 699). Additionally, the Court held a hearing on this Motion on March 3, 2015. For the reasons discussed below, Cannon's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

I.   **BACKGROUND**

This case arose from alleged defects in the Copper Sands condominiums ("Copper Sands") that were converted from apartment homes to condominiums and subsequently purchased by the individual plaintiffs. (Pls.' Third Am. Compl., ECF No. 154). On December 1, 2004, the HOA entered into an Association Management Agreement (the "Agreement") with Cannon, where Cannon agreed to be the HOA's managing agent with respect to Copper Sands. (*Id.* ¶ 56; Ex. F to Def.'s Mot. for Summ. J., ECF No. 681–6).

Plaintiffs initially filed this action in state court on March 30, 2010, but Defendants removed the action to this Court on April 9, 2010. (*See* Pet. for Removal, ECF No. 1). Subsequently, Plaintiffs filed their Third Amended Complaint on April 26, 2011, which lists

twenty-two causes of action against a host of Defendants. (ECF No. 154).  Notably, Plaintiffs asserted the following causes of action against Cannon: (1) Negligence; (2) Negligent Misrepresentation; (3) Breach of Contract; and (4) Breach of Implied Warranties. (*Id.* ¶¶ 77–98, 118–50, 155–63).

## II.   <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an

essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

III.   **DISCUSSION**

   A.   **Statute of Repose**

Cannon asserts that Nevada's ten-year statute of repose for claims related to alleged

deficient construction or any resulting injury bars Plaintiffs' claims as untimely. (Def.'s Mot. for Summ. J. 14:23–25, ECF No. 679). Particularly, Cannon asserts NRS 11.203 applies, which provides as follows:

> 1. Except as otherwise provided in NRS 11.202 and 11.206, no action may be commenced against the owner, occupier or any person performing or furnishing the design, planning, supervision or observation of construction, or the construction of an improvement to real property more than 10 years after the substantial completion of such an improvement, for the recovery of damages for:
>
> (a) Any deficiency in the design, planning, supervision or observation of construction or the construction of such an improvement which is known or through the use of reasonable diligence should have been known to him or her;
> …
> 2. Notwithstanding the provisions of NRS 11.190 and subsection 1 of this section, if an injury occurs in the 10th year after the substantial completion of such an improvement, an action for damages for injury to property or person, damages for wrongful death resulting from such injury or damages for breach of contract may be commenced within 2 years after the date of such injury, irrespective of the date of death, but in no event may an action be commenced more than 12 years after the substantial completion of the improvement.

Nev. Rev. Stat. § 11.203. Cannon also asserts that Nevada's eight-year statute of repose for latent deficiencies and six-year statute of repose for patent deficiencies apply. (Def.'s Mot. for Summ. J. 14:27–15:2). These statutes of repose protect "the owner, occupier or any person performing or furnishing the design, planning, supervision or observation of construction, or the construction of an improvement to real property." *See* Nev. Rev. Stat. §§ 11.203–05.

Here, the Court finds that the plain language of the statutes of repose asserted by Cannon demonstrate their inapplicability to Plaintiffs' claims against Cannon. Cannon concedes that it did not participate in the original construction of Copper Sands. (Def.'s Mot. for Summ. J. 17:21–24). Moreover, Cannon does not assert that it is, or ever was, an owner, occupier or any person performing or furnishing the design, planning, supervision or observation of

construction, or the construction of an improvement to Copper Sands. Accordingly, the Nevada statutes of repose asserted by Cannon do not bar Plaintiffs' claims against Cannon as untimely and the Court denies Cannon's Motion on this basis.

### B.  Breach of Contract

In its Third Amended Complaint, Plaintiff alleges that Cannon breached the Agreement "by failing to maintain and repair the Subject Property, and by failing to collect adequate assessments." (TAC ¶ 145). Cannon asserts that Plaintiff has no evidence to support its claim of breach of contract. (Def.'s Mot. for Summ. J. 19:24–26). First, Cannon asserts that there is no evidence to support the allegation that it was obligated to repair allegedly deficient conditions created during original construction, explaining that "Plaintiff's lack of evidence in that regard is most immediately shown by the express contractual term withholding any authority for Cannon to incur expenses greater than $1,000.00 without approval, compared to Plaintiff's alleged cost to repair of $11,453,731.91." (*Id.* 20:3–8). Moreover, Cannon asserts that "the written contract clearly does not obligate or authorize Defendant to undertake repairs at Defendant's own expense." (*Id.* 20:16–17).

The Agreement provides that "[Cannon] will cause the common areas to be maintained, repaired and kept in as new and excellent condition as [Cannon] can possibly provide and shall provide for such regular cleaning, painting, decorating, ground care and protective maintenance and repair work, as a prudent property management company would provide for," and "[Cannon] shall require [Plaintiff]'s approval for non-recurring capital expenses greater than $1,000. [Cannon] shall not require approval for normal recurring expenses." (Ex. F to Def's Mot. for Summ. J. at 3, ECF No. 681-6). These provisions establish a duty to provide maintenance and repair the common areas, and this duty is not discharged when the cost of repairs exceeds $1,000 but rather, Cannon must seek approval from the Association before doing such repairs. Accordingly, Cannon had a duty to undertake repairs in excess of $1,000, if

Plaintiff provided approval of such repairs, and summary judgment cannot be granted on this basis.

Next, Cannon asserts that Plaintiff has no evidence to support the allegations that Cannon breached the Agreement by failing to maintain and repair the subject property and to collect adequate assessments. (Def.'s Mot. for Summ. J. 19:27–20:3).  The Court finds Plaintiff presented sufficient evidence to raise a genuine issue of material fact exists regarding Cannon's alleged breach of the Agreement.  More specifically, a genuine issue of material fact exists regarding whether Cannon breached the duty to maintain the subject property, repair the subject property, bill assessments, and collect assessments.  Therefore, the Court denies Cannon's Motion as to Plaintiff's breach of contract claim.

### C. Breach of Implied Warranty

In its Third Amended Complaint, Plaintiff alleges that Cannon:

> breached its implied warranty by failing to use reasonable care and skill to discover and disclose defects in the Subject Property, failing to use reasonable care and skill to maintain and repair the Subject Property, failing to use reasonable care and skill to discover and disclose financial deficiencies in connection with the Subject Property, and failing to use reasonable care and skill to collect assessments and pre-assessment contributions in amounts sufficient to maintain adequate reserves.

(TAC ¶ 161).  Cannon asserts that there is no evidence of any implied warranties. (Def.'s Mot. for Summ. J. 20:24–26).  This Court has already explained in previous orders in this case that it will not extend Plaintiffs' invitation to extend the implied warranty to perform services in a workmanlike manner to loan providers or appraisers of property. (*See* Orders, ECF Nos. 407–08).  For the same reasons, this Court will not extend the implied warranty to perform services in a workmanlike manner to a property management company.  The only Nevada cases on point applied the cause of action to services in construction, manufacturing or engineering. *See Radaker v. Scott,* 855 P.2d 1037 (Nev. 1993); *Daniel, Mann, Johnson & Mendenhall v. Hilton*

*Hotels Corp.,* 642 P.2d 1086 (Nev. 1982). Accordingly, the Court grants Cannon's Motion as to Plaintiff's breach of implied warranty claim.

### D. Negligence

In its Third Amended Complaint, Plaintiff alleges that Cannon "owed Plaintiffs a duty to exercise reasonable care in managing the Subject Property." (TAC ¶ 86). Moreover, Plaintiff alleges that Cannon "breached the foregoing duty in particulars including, but not limited to, the following:

> a. By failing to maintain and repair common areas of the Subject Property.
> b. By failing to discover that assessments were insufficient to maintain adequate reserve levels.
> c. By failing to ensure that the reserve study had sufficient funding.
> d. By failing to discover that financial reports by Defendant Copper Sands Realty, LLC did not include adequate reserves.
> e. By failing to collect pre-assessment payments from Defendant Copper Sands Realty, LLC in amounts sufficient to maintain adequate reserves. This omission violated NRS 116.3115(1) and thus constituted negligence per se.
> f. By failing to collect assessments in amounts sufficient to maintain adequate reserves. This omission violated NRS 116.3115(2)(a) and NRS 116.3115(2)(b), and thus constituted negligence per se.
> g. By failing to protect Plaintiffs against fraud, misrepresentations and unethical practices by Defendants Dario Deluca, Copper Sands Realty, LLC, Pacifica Enterprises, Inc. and Pacifica Real Estate Services, Inc."

(*Id.* ¶ 87).

First, Cannon asserts that "[t]here is also no factual or legal support for any implied or common law duty to Plaintiff from Cannon to repair and maintain common areas." (Def.'s Mot. for Summ. J. 24:23–24). Moreover, Cannon asserts that "Plaintiff does not have any evidence Cannon otherwise failed to repair or maintain common areas pursuant to any contractual provisions." (*Id.* 24:25–26). "Because negligence is a tort, the breach must be a violation of a

duty imposed by law independent of a breach of a contractual duty. *Bernard v. Rockhill Dev. Co.,* 103 Nev. 132, 734 P.2d 1238, 1240 (1987). However, that does not mean that parties to a contract cannot commit torts against each other. *Id.* The question is whether "the actions or omissions complained of constitute a violation of duties imposed by law, or of duties arising by virtue of the alleged express agreement between the parties." *Id.* The duty to Plaintiff from Cannon to repair and maintain is explicitly imposed in the Agreement. Additionally, Plaintiff does not demonstrate and the Court cannot find how this duty is imposed independently by law.

Second, Cannon asserts that "[t]here is no basis in fact or law to support Plaintiff's improper allegation of some unspecified duty for Cannon to recognize insufficiency of any assessments or to maintain adequate reserve levels. . . . Nonetheless, there is no evidence of any assessments by Plaintiff upon its membership, and therefore no ability for dissatisfaction regarding same." (Def.'s Mot. for Summ. J. 25:5–14). On the other hand, Plaintiff contends that "[f]ormer NAC 116.300(1), in effect when Cannon's was the HOA's manager, required community managers to '[c]omply with the lawful provisions of the governing documents of each client[.]' And the HOA's governing documents (the CC&Rs and By-Laws) required an annual review of the reserve study as part of the budgeting process. Since Cannon undertook to prepare budgets on behalf of the HOA, it was therefore obligated to review the reserve study in order to ascertain its adequacy." (Response 19:13–20).

Former NAC 116.300(1), now NRS 116A.630(2)(b), provides that a community manager shall comply with all applicable "[l]awful provisions of the governing documents of each client." Nev. Rev. Stat. § 116A.630(2)(b). Plaintiff attaches to its Response the Covenants, Conditions, and Restrictions (CC&Rs) for Copper Sands Homeowners Association and the By-Laws of Copper Sands Homeowners Association. (Exs. 10–11 to Response, ECF Nos. 698-10, 698-11). The CC&Rs provide that:

> [T]he Board of Directors shall adopt a proposed budget of the Common Expenses of the Project, which shall include the budget for

> the daily operation of the Association and an adequate reserve for the repair, replacement and restoration of the major components of the Common Elements….

(Ex. 10 to Response at 17, ECF No. 698-10).  The By-Laws also provide that:

> It shall be the duty of the Board of Directors to … [e]stablish and maintain a separate reserve account for the repair, replacement and restoration of the major components of the Common Elements … [and] [c]ause to be conducted at least once every 5 years a study of the reserves … [that] shall be reviewed at least annually (during the preparation of the Association budget) to determine if those reserves are sufficient in order to make any adjustments as may be necessary to maintain adequate reserves.

(Ex. 11 to Response at 13–14, ECF No. 698-11).  However, the Court does not find that NRS 116A.630(2)(b) transfers the duties of the Board of Directors contained within the governing documents to Defendant.  Rather, the statutory provision merely requires that Defendant comply with the lawful provisions contained in the governing documents.

Third, Cannon asserts that "there is no basis in fact or law for Plaintiff to allege any duty by Cannon to perform any analysis or make any determinations regarding sufficiency of reserve studies. There is certainly no duty imposed upon Cannon to fund reserves." (Def.'s Mot. for Summ. J. 25:17–20).  As discussed above, the Court does not find that NRS 116A.630(2)(b) transfers the duties of the Board of Directors contained within the governing documents to Defendant.

Fourth, Cannon asserts that "[t]here is no basis in law or fact to support Plaintiff's unspecified allegation of a duty to analyze and criticize financial reports of a seller. The limited written contract for property management did not include any such duty, and there is no evidence of any such duty." (Def.'s Mot. for Summ. J. 26:8–10).  As discussed above, the Court does not find that NRS 116A.630(2)(b) transfers the duties of the Board of Directors contained within the governing documents to Defendant.

Fifth, Cannon asserts that "there is no evidence or legal basis for any duty to Plaintiff by Cannon to impose assessments upon any others, whether Plaintiff's membership or seller." (Def.'s Mot. for Summ. J. 26:17–19).  Moreover, Cannon asserts that "Plaintiff's citation to NRS 116.3115 for that purpose is misplaced because those provisions apply to homeowners associations, but not any community association managers." (*Id.* 26:20–22).  On the other hand, Plaintiff asserts that "Cannon, having undertaken to act on the HOA's behalf, was thus obligated to fulfill the preceding requirements." (Response 22:23–24).

NRS 116.3115 provides:

> 1. Until the association makes an assessment for common expenses, the declarant shall pay all common expenses. After an assessment has been made by the association, assessments must be made at least annually, based on a budget adopted at least annually by the association in accordance with the requirements set forth in NRS 116.31151. Unless the declaration imposes more stringent standards, the budget must include a budget for the daily operation of the association and a budget for the reserves required by paragraph (b) of subsection 2.
> 2. Except for assessments under subsections 4 to 7, inclusive, or as otherwise provided in this chapter:
>    (a) All common expenses, including the reserves, must be assessed against all the units in accordance with the allocations set forth in the declaration pursuant to subsections 1 and 2 of NRS 116.2107.
>    (b) The association shall establish adequate reserves, funded on a reasonable basis, for the repair, replacement and restoration of the major components of the common elements and any other portion of the common-interest community that the association is obligated to maintain, repair, replace or restore. …

Nev. Rev. Stat. § 116.3115.  The Agreement between the parties does not provide impose a duty upon Cannon to comply with NRS 116.3115.  Moreover, the Court does not find that NRS 116.3115 transfers the duties of the HOA to Defendant.

Sixth, Cannon asserts that "[t]here is no basis in law or fact for Plaintiff to allege some

unspecified duty for Cannon to protect against alleged fraud, misrepresentation or unethical practices by others, including any other prior Defendants to the litigation." (Def.'s Mot. for Summ. J. 27:1–3).  Moreover, Cannon asserts that "[t]here is no authority for this allegation by Plaintiff, and it is clearly incapable of any manageable application." (*Id.* 27:3–4).  On the other hand, Plaintiff avers:

> Cannon's insistence that it had no duty to protect the HOA from financial chicanery by CSR and its affiliates is incompatible with Cannon's role as the HOA's agent. Because "[t]he object of the agency is to ensure the transaction of the business of the principal to his best advantage" *(LeMon v. Landers, supra.* 81 Nev. at 332, 402 P.2d at 649), an agent is required to disclose to his principal all information that the agent knows, or in the exercise of reasonable care should know, which is relevant to the affairs entrusted to the agent. *Restatement (Second) of Agency* § 381 (1958): *White Cap Indus., Inc. v. Ruppert.* 119 Nev. 126. 129. 67 P.3d 318, 319 (2003). Hence, if an agent has reason to suspect that his principal is about to walk off a cliff as it were, the agent may not remain silent; his fiduciary role requires him to speak up—indeed, to shout loudly—in order to safeguard his principal from impending harm. *Rookard v. Mexicoach,* 680 F.2d 1257. 1263 (9th Cir. 1982). … For the reasons explained earlier, Cannon should have known that CSR had underfunded the reserves and misrepresented their adequacy. Cannon therefore had a duty to alert the HOA to these matters.

(Response 23:3–21).  Although, this allegation may imply that Cannon breached a fiduciary duty to Plaintiff, Plaintiff did not assert a claim of breach of fiduciary duty against Cannon.

Accordingly, the Court finds that none of the duties alleged by Plaintiff were imposed on Cannon by law.  Therefore, the Court grants Cannon's Motion as to Plaintiff's claim of negligence.

**E.     Negligent Misrepresentation**

In its Third Amended Complaint, Plaintiff alleges that Cannon "owed Plaintiffs a duty to disclose all material facts which [Cannon] knew, or by the exercise of reasonable care should have known, adversely affecting the HOA's finances or that of the unit owners with respect to

the Subject Property." (TAC ¶ 125).  Moreover, Plaintiff alleges that Cannon "breached the foregoing duty in particulars including, but not limited to, the following:

> a. By inadvertently failing to disclose that assessments were insufficient to maintain adequate reserve levels.
>
> b. By inadvertently failing to disclose that the reserve studies were not sufficiently funded.
>
> c. By inadvertently failing to disclose that financial reports by Defendant Copper Sands Realty, LLC did not include adequate reserves.
>
> d. By inadvertently failing to disclose fraud, misrepresentations and unethical practices by Defendants Dario Deluca, Copper Sands Realty, LLC, Pacifica Enterprises, Inc. and Pacifica Real Estate Services, Inc."

(*Id.* ¶ 126).  Cannon asserts that "[s]ummary judgment is required upon all of the foregoing allegations and the Plaintiff's cause of action for negligent misrepresentation for the same reasons stated above in support of summary judgment upon Plaintiff's cause of action for negligence and the related allegations; those arguments are incorporated here to avoid redundancy." (Def.'s Mot. for Summ. J. 28:4–7).  Additionally, Cannon asserts that "there is no evidence of any knowledge by Cannon for any of the factual allegations within Plaintiff's negligent misrepresentation cause of action, and therefore there is no evidence of any failure to disclose by Cannon." (*Id.* 28:7–10).

This claim seems to track closely with Plaintiff's negligence claim.  For the same reasons, the Court does not find such duties to be imposed upon Cannon by law.  Accordingly, the Court grants Cannon's Motion as to Plaintiff's negligent misrepresentation claim.

### F. Proximate Causation

Cannon asserts that it "did not cause or create any of the conditions Plaintiff alleges to be defective." (Def.'s Mot. for Summ. J. 28:22–24).  Moreover, Cannon asserts that "Plaintiff

expressly pleads the alleged damages at issue all pertain to alleged expenses to repair conditions created during original construction. The essential issue is that there is no evidence of proximate causation implicating Cannon for any damages because all conditions alleged to be at issue were created by others, and there is clearly no basis to assign any responsibility for those conditions to Cannon." (*Id.* 28:24–29:2). On the other hand, Plaintiff asserts that although "Cannon did not create any of the physical problems…it did exacerbate the financial problems—which are the ultimate injury sustained by Plaintiffs as a result of the physical ones—by failing to disclose the funding deficiency and failing to collect adequate assessments." (Response 25:10–12). The Court finds that a genuine issue of material fact exists as to whether Cannon exacerbated Plaintiff's damages. Therefore, the Court denies Cannon's Motion on this basis.

### G.  Assumption of Risk

Finally, Cannon asserts that an addendum to the purchase agreements entered into by Copper Sands Realty, LLC and the individual purchasers "precludes Plaintiff from presenting any evidence of the existence of some contractual obligation for the condition of Copper Sands." (Def.'s Mot. for Summ. J. 31:2–4). Moreover, Cannon asserts that "Plaintiff is unable to generate a genuine issue of material fact that there existed or that Cannon breached any contractual duty to Plaintiff for the condition of the Copper Sands project." (*Id.* 31:4–6). Additionally, Cannon asserts that, "because the seller expressly disclaims all warranties in writing for the conditions at issue in this litigation, Plaintiff is also unable to generate a genuine issue of material fact that there existed or that Cannon breached any warranties to Plaintiff for those conditions." (*Id.* 31:7–10).

On the other hand, Plaintiff asserts that Cannon does not have standing to invoke the disclaimers because "Cannon is nowhere mentioned in the purchase agreements, much less expressly declared an intended beneficiary thereof. The 'Seller' is identified solely as 'Copper

Sands Realty LLC', and the exculpatory clauses purport to absolve only 'Seller' of liability." (Response 26:12–15). Moreover, Plaintiff contends that the disclaimers are unenforceable as a matter of law and issues of fact exist regarding whether Addendum D adequately disclosed the defects in question. (*Id.* 26:16–37:6).

The Court finds that Cannon does not have standing to invoke the disclaimers. Moreover, even if the disclaimers were enforceable as a matter of law and Cannon had standing to invoke them, such disclaimers would not discharge Cannon's duties under the Agreement. Therefore, the Court denies Cannon's Motion on this basis.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Cannon's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. Accordingly, the Court dismisses the following claims against Cannon: (1) breach of implied warranty; (2) negligence; and (3) negligent misrepresentation. However, Plaintiff's claim of breach of contract survives Cannon's Motion and remains the only claim for resolution at trial.

**DATED** this 5th day of March, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge